VERNON T. SHUCK, Appellant, v. THE CARROLL DAILY HERALD, Appellee.

No. 41754.

APRIL 4, 1933.

W. L. Ryan, for appellant.

Ralph Maclean, for appellee.

MITCHELL, J.—The appellee is the only daily newspaper published in Carroll, Carroll county, Iowa, and among its other activities is the accepting and publishing of advertisements for its customers. The appellant is, and for a considerable length of time has been, locally and permanently engaged in said city in the business of collecting and receiving clothing for cleaning, repairing, etc., and redelivering the same to the public.

On or about October 19, 1931, the appellant tendered to the appellee a proper advertisement to be published in said newspaper on October 20, 1931, and paid appellee its required fee for the same, and the appellee orally agreed to publish the same for the fee so tendered. The nature of the advertisement is not shown in the record, but there appears to be no question raised but that it

was a proper one. Thereafter the appellee, instead of publishing the advertisement as requested, returned the same to the appellant with the money that the appellant had paid the appellee therefor, and the appellant accepted, under protest, the return of the money and of the advertisement. At the times herein referred to appellee devoted space in its daily publication to general advertising, and rented and sold space to both residents and nonresidents of said town and county, and to others in the same business and class as appellant.

On the 13th day of November, 1931, the appellant filed in the Carroll county district court a verified petition against the appellee, asking for damages in the amount of $400 for failure to publish the advertisement tendered by the appellant to the appellee. Thereafter the appellant filed an amended and substituted petition in equity, praying for an injunction restraining the appellee from refusing to accept and publish proper advertisements furnished by the appellant to the appellee upon payment by the appellant to the appellee of its required fee for same, and requiring the appellee to publish such advertisements upon the payment of such fees and appellant's compliance with proper regulations of appellee, and for equitable relief. The appellant also filed a dismissal of the law part of his action, and the cause was transferred by the court to the equity side of the calendar on motion of the appellant. To this amended and substituted petition the appellee filed a motion to dismiss the appellant's petition on the grounds that:

"It appears on the face of * * * the plaintiff's pleadings that the defendant is under no legal or other obligation to accept or publish advertising matter for plaintiff, and that if plaintiff would be damaged by reason of defendant's refusal to publish such matter it is *damnum absque injuria*, and because it further appears from the face of the said pleading that this court is without jurisdiction or any right, power or authority to issue what is in effect a mandamus against this defendant to compel it to accept such advertising, since this defendant is not touched with a public use and is not subject to regulations by the laws of Iowa and this Court has no authority to declare it so touched with a public use, as such authority if it exists, resides only in the legislature of the State of Iowa; for that it appears on the face of the said petition that this Court is asked to interfere by way of mandamus or mandatory injunction

with the private right of the defendant to contract in violation of the Constitution of Iowa relating thereto; for that it appears on the face of the said pleading that the claimed irreparable injury therein stated has not and cannot accrue to the plaintiff and is a mere conclusion of law of the pleader."

Upon submission of the motion to dismiss the court entered an order dismissing appellant's amended and substituted petition, and from such ruling appellant has appealed to this court.

The question which confronts the court in this case is whether or not a daily newspaper is required to accept for publication an advertisement in proper form where the rate which the newspaper charges for publishing like advertisements is tendered to the newspaper, or whether or not a daily newspaper has a right to refuse to publish any advertisement that it desires to refuse, without giving any reason whatever for refusing to publish it.

The first English newspaper is believed to be the Weekly News, issued in London in 1622. In the United States, "Publick Occurrences" was started in Boston in 1690; the Boston News Letter followed in 1704; but the oldest existing newspaper in the United States is the New Hampshire Gazette, founded in 1756.

Our common law is generally dated at about the time of the Declaration of Independence, or perhaps at the time of the Revolution. Newspapers had then existed in England for one hundred and fifty years, and in America for almost a hundred years. During that period they operated side by side with carriers and inns. The rules forbidding the latter to discriminate between customers were established, yet nobody goes so far as to even claim that there is any holding at common law under which a newspaper was bound by the same rules. What is claimed is that the rule now exists against newspapers under principles established at common law. If these common-law principles applied to newspapers, they applied with equal force to theatres and so-called places of public amusement.

The question of whether they applied to such places was urged on this court in Bowlin v. Lyon, 67 Iowa 536, 25 N. W. 766, 767, 56 Am. Rep. 355. This court said:

"The allegation of the petition is that defendants kept and operated the rink as a place of public amusement, but it is not shown by any averment that the business of operating it is carried

on under a license or privilege granted by the state, or the municipal corporation in which it is conducted, or that it is in any manner regulated or governed by any of the police regulations of the city. The reasonable inference from the allegations of the petition is that defendants are the owners of a building in which they permit parties to engage in the exercise of roller skating, for which privilege they charge a consideration, and where exhibitions are sometimes given by experts in the art of skating, on which occasions an admission fee is charged, and that the general public was invited to resort to the place for amusement and recreation. It may be said, as a general rule, that the law does not undertake to govern or regulate the citizen in the conduct of his private business. In all matters of mere private concern he is left free to deal with whom he pleases, and to make such bargains as he is able to make with those with whom he does deal. There are, however, classes of business in the conduct and management of which, notwithstanding they may be conducted by private parties for their own emolument, the general public has such interest as that they are properly the subject of regulation by law, and those engaged in them are subject to re-strictions and limitations which do not apply to persons engaged in other kinds of business. Innkeepers and carriers of passengers are of this class. All members of the general public are entitled to demand accommodations from them, and they are bound to af-ford such accommodations if they are able to do so. If the inn-keeper has room in his house he is bound to receive and entertain any traveler or wayfaring person who applies for accommodation, and is able and willing to pay a reasonable consideration therefor, and whose character and conduct are unobjectionable; and the car-rier is also bound to receive all members of the public who apply for accommodation, and whom he is able to accommodate. * * * The ground upon which these restrictions are imposed is that persons engaged in these vocations are in some sense servants of the pub-lic, and in conducting their business they exercise a privilege con-ferred upon them by the public, and they have secured to them by the law certain privileges and rights which are not enjoyed by the members of the public generally."

The appellant's case here is bottomed on the case of Uhlman v. Sherman which decision is reported in 22 Ohio N. P. (N. S.) 225. The Uhlman case has been before two respectable courts since it

1280

was given forth, the United States District Court in Michigan and the Supreme Court of Louisiana. Both have refused to follow it.

In Friedenberg v. Times Pub. Co., 170 La. 3, 127 So. 345, the court said:

"The weight of authority is that the publishing of a newspaper is a strictly private enterprise, and the publishers thereof are free to contract and deal or refuse to contract and deal with whom they please. [Citing cases.] And at any rate, it is for the legislature, and not for the courts, to declare that a business has become impressed with a public use. * * *

"There is, however, one case holding the contrary doctrine, to wit, Uhlman v. Sherman, 22 Ohio N. P. (N. S.) 225. But we prefer to follow the weight of authority."

In re Wohl (D. C.) 50 F. (2d) 254, 256, the court said:

"Coming to the specific application of the doctrine invoked, the only case specifically holding a newspaper to be clothed with a public interest is the decision of the nisi pruis court of Ohio in the case of Uhlman v. Sherman [22 Ohio N. P. (N. S.) 225], supra. It is interesting to note that there the nisi prius judge frankly admitted that learned and diligent counsel on both sides were unable to find a parallel case, and that he himself had been unable to find one. * * * I find * * * that there is no such trend of decision as the trustee urges. A newspaper is not at the common law a business clothed with a public interest."

In the case of Mack v. Costello, 32 S. D. 511, 143 N. W. 950, at page 951, Ann. Cas. 1916 A, 384, the court said:

"The publication of a newspaper is strictly a private business. It may be begun, or discontinued, at the will of the publisher. The publisher, in publishing a newspaper, assumes no 'office, trust, or station,' in a public sense, or enters into any public or contractual relation with the community at large. It may be that the publishing of a newspaper is a quasi public business; but, if so, it is only because, from long existence, it is regarded as a public necessity. But as much might be said of the hardware or grocery business, and yet no one would contend that a grocer or hardware dealer could be compelled by mandamus to sell his wares if he preferred to keep them on his shelf."

Since the Uhlman case was decided, the Pennsylvania and

Massachusetts courts have spoken on the same subject, without citing that case, and have arrived at a different conclusion. Philadelphia Record Co. v. Curtis-Martin Newspapers, 305 Pa. 372, 157 A. 796, 797; Com. v. Boston Transcript Co. 249 Mass. 477, 144 N. E. 400, 35 A. L. R. 1.

But it is not necessary for us to look outside of Iowa to find the rule covering the case at bar, for it seems to us that the very question is covered by the decision handed down by this court in the case of Wooster v. Mahaska County, 122 Iowa 300, 98 N. W. 103, 104. This court spoke directly on the subject, saying:

"It is true, the law provided that certain papers should be designated as the official papers of the county, and this without any discretion on the part of the board; but neither the legislature nor the board could compel any paper to publish the proceedings, no matter what compensation might be fixed therefor, and, if the plaintiff was not satisfied with the rate fixed by the board, he was under no obligation to do the work."

The newspaper business is an ordinary business. It is a business essentially private in its nature—as private as that of the baker, grocer, or milkman, all of whom perform a service on which, to a greater or less extent, the communities depend, but which bears no such relation to the public as to warrant its inclusion in the category of businesses charged with the public use. If a newspaper were required to accept an advertisement, it could be compelled to publish a news item. If some good lady gave a tea, and submitted to the newspaper a proper account of the tea, and the editor of the newspaper, believing that it had no news value, refused to publish it, she, it seems to us, would have as much right to compel the newspaper to publish the account as would a person engaged in business to compel a newspaper to publish an advertisement of the business that that person is conducting.

Thus, as a newspaper is a strictly private enterprise, the publishers thereof have a right to publish whatever advertisements they desire and to refuse to publish whatever advertisements they do not desire to publish.

The lower court was right in dismissing the petition of the plaintiff, and this cause is hereby affirmed.

All Justices concur.

UTTERBACK, J., takes no part.