177 So.2d 704 (1965)
APPROVED PERSONNEL, INC., et al., Appellants,
v.
The TRIBUNE COMPANY, a Florida corporation, Appellee.
No. G-123.
District Court of Appeal of Florida. First District.
July 20, 1965.
Rehearing Denied August 31, 1965.
Sanford M. Swerdlin, Miami, T.T. Turnbull, Tallahassee, and Joe N. Unger, Miami, for appellants.
Hugh C. Macfarlane and Brooks P. Hoyt, of Macfarlane, Ferguson, Allison & Kelly, Tampa, and Ausley, Ausley, McMullen, O'Bryan, Michaels & McGehee, Tallahassee, for appellee.
*705 WIGGINTON, Acting Chief Judge.
Plaintiffs have appealed a summary final decree rendered in favor of defendant. The two-pronged attack on the decree appealed is first leveled at the action of the chancellor in striking those paragraphs of the complaint which allege one of the two alternative theories upon which relief is sought, and secondly in entering the summary final decree on the remaining theory without taking into account the grounds which supported the rejected theory.
Appellants are three private employment agencies operating in the greater Hillsborough County area pursuant to the authority of Chapter 449, F.S.A. Accepting as true the material allegations of their complaint it appears that they compete with no less than thirteen other similar business organizations conducting private employment agencies in that area. In order to successfully carry on the business in which the appellants and their competitors are engaged, it is vitally necessary that they publish classified advertisements concerning the services they offer their clients in the daily newspapers published within the area served by them.
Appellee is a corporation which owns and publishes the only two English speaking daily newspapers in Hillsborough County, one being The Tampa Tribune which is published in the morning, and the other being The Tampa Times which is published in the evening. For a number of years prior to May 2, 1959, appellants maintained business relations with appellee through written contracts pursuant to which the classified advertisements prepared by appellants and submitted to appellee were published in its daily newspapers.
On May 2, 1959, appellee notified appellants that commencing three days thereafter no further advertisements would be accepted from them for publication in appellee's newspapers. No cause for this action was given, however, appellee continued to publish the classified advertisements submitted to it for publication by appellants' competitors in Hillsborough County.
The complaint seeks recovery on two alternative theories. Under the first theory it is contended that appellee wrongfully breached its contract with appellants by cancelling their contracts without cause, as a result of which appellants have suffered damages for which they seek recovery.
Under the alternative theory appellants contend that appellee occupies a monopolistic position in Hillsborough County insofar as concerns the publication and dissemination of advertising material to the inhabitants of that area, and is unlawfully engaged in practices which restrict trade and commerce and the full and free pursuit of the lawful business conducted by appellants, contrary to the laws of this state. Injunctive and declaratory relief is prayed.
The chancellor granted appellee's motion to strike those paragraphs of the complaint alleging monopolistic practices in restraint of trade and commerce. Thereafter the chancellor heard and granted appellee's motion for summary final decree on the remaining theory of the complaint by which recovery was sought for alleged breach of contract.
By this appeal appellants do not question the correctness of the chancellor's ruling that appellants have no cause of action against appellee on the theory involving breach of contract. Since the correctness of that phase of the litigation is conceded by appellants, no further reference to this theory of the complaint will be made.
In his order granting appellee's motion to strike those paragraphs of the complaint alleging as grounds for relief monopolistic practices in restraint of trade or commerce and the full and free pursuit of appellants' businesses, the chancellor ruled:
"ORDERED, ADJUDGED AND DECREED that the Motion to Strike Paragraphs 6, 8, 11, 13 and 14 be and the same is granted and said paragraphs *706 are hereby stricken, the Court being of the view that said paragraphs seek to importune the Court to exercise powers which the Court deems to be Legislative in nature; * * *."
From the foregoing excerpt of the court's order granting appellee's motion to strike those portions of the complaint alleging monopolistic practices and restraint of trade, it is obvious that the chancellor concluded the complaint failed to allege facts constituting the violation of any law of Florida. In the absence of any statutory provisions to the contrary, the law seems to be uniformly settled by the great weight of authority throughout the United States that the newspaper publishing business is a private enterprise and is neither a public utility nor affected with the public interest. The decisions appear to hold that even though a particular newspaper may enjoy a virtual monopoly in the area of its publication, this fact is neither unusual nor of important significance. The courts have consistently held that in the absence of statutory regulation on the subject, a newspaper may publish or reject commercial advertising tendered to it as its judgment best dictates without incurring liability for advertisements rejected by it.
In the case of Shuck v. Carroll Daily Herald[1] suit was brought by an advertiser against the only daily newspaper published in the county. It was established that plaintiff was engaged in a legitimate business in the locality, and had tendered to the newspaper a proper advertisement to be published on a stated date, paying the usual fee required for this service. Although the newspaper agreed to publish the advertisement as requested, it changed its mind and rejected it by returning to the plaintiff the copy, together with the amount paid for the advertising charges. Suit was brought seeking damages for the failure of the newspaper to publish plaintiff's advertisement as requested. The question presented for decision to the Supreme Court of Iowa was stated to be as follows:
"The question which confronts the court in this case is whether or not a daily newspaper is required to accept for publication an advertisement in proper form where the rate which the newspaper charges for publishing like advertisements is tendered to the newspaper, or whether or not a daily newspaper has a right to refuse to publish any advertisement that it desires to refuse, without giving any reason whatever for refusing to publish it."
In resolving the foregoing question the court held:
"The newspaper business is an ordinary business. It is a business essentially private in its nature  as private as that of the baker, grocer, or milkman, all of whom perform a service on which, to a greater or less extent, the communities depend, but which bears no such relation to the public as to warrant its inclusion in the category of businesses charged with the public use. If a newspaper were required to accept an advertisement, it could be compelled to publish a news item. If some good lady gave a tea, and submitted to the newspaper a proper account of the tea, and the editor of the newspaper, believing that it had no news value, refused to publish it, she, it seems to us, would have as much right to compel the newspaper to publish the account as would a person engaged in business to compel a newspaper to publish an advertisement of the business that that person is conducting.
"Thus, as a newspaper is a strictly private enterprise, the publishers thereof have a right to publish whatever advertisements they desire and to refuse *707 to publish whatever advertisements they do not desire to publish."
The note in the annotation appearing in 87 A.L.R. 979 is as follows:
"With the exception of one case, Uhlman v. Sherman (1919) 22 Ohio N.P.N.S. 225, 31 Ohio Dec. N.P. 54 (set out infra), it has been uniformly held in the few cases which have considered the question that the business of publishing a newspaper is a strictly private enterprise, as distinguished from a business affected with a public interest, and that its publisher is under no legal obligation to sell advertising to all who may apply for it."
In Poughkeepsie Buying Service, Inc. v. Poughkeepsie Newspapers, Inc.,[2] suit was brought by a merchant in the City of Poughkeepsie against the publishers of the only daily newspaper in that community alleging that because of the persuasions and coercions of plaintiff's competitors, the newspaper refused to publish advertising material submitted to it by plaintiff. The complaint alleged a decrease in business resulting in irreparable damages as a result of the refusal by the newspaper to publish plaintiff's advertisements. In considering defendant's motion to dismiss the complaint for failure to state a cause of action the court stated the question with which it was confronted to be as follows:
"To dispose of the motion, the court must decide whether a newspaper publisher may be required to publish proper advertising matter upon the tender of the usual charge therefor or whether such publisher is free to contract and deal with whom he pleases. * * *"
In concluding that the complaint failed to state a cause of action and should be dismissed, the Supreme Court of New York said:
"* * * And it is said to be `the well-settled law of this State that the refusal to maintain trade relations with any individual is an inherent right which every person may exercise lawfully, for reasons he deems sufficient or for no reasons whatever, and it is immaterial whether such refusal is based upon reason or is the result of mere caprice, prejudice, or malice. It is a part of the liberty of action which the Constitutions, State and Federal, guarantee to the citizen.' Locker v. American Tobacco Co., 121 App.Div. 443, 451-452, 106 N.Y.S. 115, 121, affirmed 195 N.Y. 565, 88 N.E. 289. There are limitations to this inherent right, but such limitations must be found either in firmly established common law principles or in statutory regulations enacted pursuant to the police power for the public good. It has been ably pointed out that there was no rule at common law, similar to the rules applicable to common carriers and inns, whereby a newspaper was forbidden to discriminate between customers. See, Shuck v. Carroll Daily Herald, supra. And there are no pertinent statutory regulations in this state. It may be that the legislature has the right to reasonably regulate the newspaper advertising business but the fact that it has not seen fit to do so does not confer power upon the courts to impose rules for the conduct of such business."
In Gordon v. Worcester Telegram Publishing Co.[3] suit was brought by a real estate concern against the owner and publisher of three newspapers operating in the City of Worcester which were the only newspapers having a general circulation in that area. The complaint alleged that the newspapers were public utilities having an absolute monopoly of the publishing business in the community. The complaint *708 alleged that although defendant had previously published advertising submitted to it by plaintiff, that on a date stated the defendant cancelled its advertising contract with plaintiff and thereafter, without cause, maliciously refused to accept for publication in its newspapers further advertising from plaintiff. In sustaining the trial court's order dismissing the complaint for failure to state a cause of action, the Supreme Judicial Court of Massachusetts held:
"* * * Moreover, we judicially know that under our law a newspaper is not a public utility. Thus the question narrows to whether the publisher of a newspaper who enjoys a virtual monopoly in a given area by reason of the fact that there are no other papers of general circulation in that area may refuse to accept an advertisement if he sees fit to do so.
"It has generally been held that the publication and sale of newspapers is a private enterprise as distinguished from a business affected with a public interest and that those engaged in such a business are free to deal with whomever they choose. * * *
"Although the precise question here involved has not often been before the courts, the prevailing view in the few cases that have considered the question  and in our opinion the correct one  is that the publisher of a newspaper is under no obligation to accept advertising from all who may apply for it. * * *"
Appellants appear to concede that the foregoing decisions represent the general law on the subject in this country, but contend that those principles are not applicable to the case sub judice because appellee's right to operate a newspaper publishing business is not absolute, but is limited by the requirements and proscriptions of Chapter 542, F.S.A., dealing with combinations restricting trade or commerce. In support of their position appellants rely upon Section 542.05 which provides as follows:
"542.05 Combinations prohibited; penalty
"Any person who shall or may become engaged in any combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons or of either two or more of them, for either, any or all of the following purposes:
"(1) To create or carry out restrictions in trade or commerce or aids to commerce, or to create or carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this state;
* * * * * *
"(5) * * * shall be punished by a fine of not less than fifty dollars nor more than five thousand dollars, and by imprisonment in the penitentiary for not less than one nor more than ten years. Each day during a violation of this provision shall constitute a separate offense."
It is noted that the above-quoted statute condemns any combination of capital, skill, or acts by two or more persons, firms, corporations, or associations of persons, but does not apply to a single individual or entity. It is appellants' position that the two newspapers now owned by appellee were at one time under separate ownerships and engaged in fierce competition for advertising business in the Hillsborough County area. Appellant earnestly contends that despite the fact these heretofore independent separate corporate entities have now been merged into one ownership, that nevertheless they should be treated as separate entities engaged in a combination of capital, skill, or acts for the purpose of creating and carrying out restrictions in trade and commerce contrary to the purpose and intent of Section 542.05, supra. If the statute above quoted is construed to apply to separate business operations even though *709 they are owned by a single individual or entity, then appellants' position would be sustainable. To do so, however, would require us to read into the statute a provision similar to Section 2 of the Sherman Anti-Trust Act adopted by the Congress of the United States which applies the full impact of the prohibition against combinations or monopolies in restraint of trade by two or more individuals or entities to the acts of a single individual having the same effect.[4] The Sherman Act has been on the statute books for many years yet the legislature of Florida has not seen fit to adopt a counterpart statute as the law of Florida.
This court feels very strongly that the judicial branch of government should never lend itself to the purpose of legislating rights, privileges, or immunities not otherwise provided by the lawmaking branch of government. Since appellee was not required to defend this action on the merits, we can only speculate as to its reasons for refusal to accept appellants' advertisements for publication. When we accept as true the allegations of the complaint for the purpose of considering the motion to dismiss, we must concede that appellants may have just complaint for the treatment they have received at the hands of appellee. If so, their remedy properly lies in petitioning the legislature to amend Chapter 542 of our statutes so as to incorporate a prohibition against the acts of which appellants now complain. This is the conclusion reached by the Supreme Court of New York in the Poughkeepsie Buying Service case, supra, and is the only conclusion which we consider to be justified under the circumstances.
For the foregoing reasons it is our view that the chancellor did not err in striking those paragraphs of the complaint purporting to allege a cause of action based upon monopolistic practices and combinations in restraint of trade and commerce. It is our further view that he properly excluded any consideration of Chapter 542, F.S.A., in rendering the summary final decree on the contract phase of the case. The decree appealed is accordingly affirmed.
STURGIS and CARROLL, DONALD K., JJ., concur.
NOTES
[1] Shuck v. Carroll Daily Herald, 1933, 215 Iowa 1276, 247 N.W. 813, 87 A.L.R. 975, 976, 978-979.
[2] Poughkeepsie Buying Service, Inc. v. Poughkeepsie Newspapers, Inc., 205 Misc. 982, 131 N.Y.S.2d 515, 516, 517-518.
[3] J.J. Gordon, Inc., et al. v. Worcester Telegram Publishing Co., Inc., 1961, 343 Mass. 142, 177 N.E.2d 586.
[4] 15 U.S.C.A. § 2.