BLOSS v. FEDERATED PUBLICATIONS, INC.

1. NEWSPAPERS—COMMON LAW—PRIVATE ENTERPRISE—ADVERTISING.
   The business of publishing a newspaper is, at common law, a strictly private enterprise, as distinguished from a business affected with a public interest, and its publisher is under no legal obligation to sell advertising to all who may apply for it.

2. CONSTITUTIONAL LAW—DECLARATION THAT BUSINESS IS IMPRESSED WITH PUBLIC USE.
   It is for the legislature, not the courts, to declare that a business has become impressed with a public use.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3-7] 39 Am Jur, Newspapers and Press Associations §§ 21, 22.
[2] 39 Am Jur, Newspapers and Press Associations § 24 et seq.

3. NEWSPAPERS—PUBLIC INTEREST.

> The publisher of a newspaper assumes no office, trust, or station in a public sense, nor does he enter into any public or contractual relation with the community at large.

4. SAME—PUBLIC INTEREST—GOVERNMENTAL REGULATION.

> The public interest demands that the newspaper press be independent, unfettered by governmental regulation, whether that regulation stems from legislative enactments or judicial decisions (US Const, Am 1).

5. SAME—PUBLIC INTEREST—ADVERTISING BY THEATER OPERATOR.

> Defendant newspaper publisher *held*, not engaged in a business affected with a public interest so as to require it to accept and print advertisements offered to it by plaintiff theater operator.

6. SAME—THEATER ADVERTISING—PUBLISHED STANDARDS.

> Defendant newspaper publisher, even if assumed to be engaged in a business affected with a public interest as claimed by theater operator, *held*, entitled to refuse plaintiff's advertising which did not meet its published standards relative to suggestive and prurient material and required extensive editorial effort by defendant's employees to meet such published standards.

7. SAME—SUMMARY JUDGMENT—ADVERTISING.

> Summary judgment in favor of defendant newspaper publisher *held*, properly granted in case where plaintiff theater operator complained that defendant refused to accept advertising of his motion picture shows, and sought mandatory injunctive relief on theory that defendant was in business affected with a public interest and could not refuse such advertising.

Appeal from Calhoun; Coleman (Creighton R.), J. Submitted Division 3 May 10, 1966, at Grand Rapids. (Docket No. 1,069.)   Decided November 9, 1966. Leave to appeal granted by Supreme Court March 9, 1967.  See 379 Mich 752, 380 Mich 485.

Complaint by Floyd G. Bloss, doing business as Eastown Theatre, against Federated Publications, Inc., a Delaware corporation, for mandatory injunctive relief to compel defendant to accept and publish advertising offered to it by plaintiff, and for in-

cidental relief. Summary judgment for defendant. Plaintiff appeals. Affirmed.

*Hillman, Baxter & Hammond,* for plaintiff.

*Joseph F. Deeb* and *James M. Sullivan,* for defendant.

HOLBROOK, P. J.  December 8, 1964, plaintiff filed his sworn complaint together with a motion for a preliminary mandatory injunction. Defendant entered its appearance and acknowledged service. Defendant filed an unsworn answer to motion for preliminary injunction and presented interrogatories to plaintiff January 26, 1965; and on March 17, 1965, plaintiff filed sworn answers to said interrogatories. No hearing on the motion for preliminary injunction was ever held. Defendant did not answer plaintiff's sworn complaint. On May 27, 1965, defendant filed a motion for summary judgment dated May 21, 1965, together with its brief in support thereof. Plaintiff did not answer, nor submit any written brief or memorandum in opposition thereto. Oral arguments were heard thereon May 28, 1965.

Plaintiff's complaint herein requested defendant be compelled to accept and print in its newspaper certain advertisements of plaintiff concerning the showing of adult movies in the city of Battle Creek, and for damages resulting from the refusal. In the first instance, defendant accepted plaintiff's advertisements for a period of about 30 days, but on November 3, 1964, notified plaintiff by letter that it would not accept any Eastown (plaintiff's) Theatre advertising effective November 4, 1964. It appears defendant did not wish to accept advertising for theaters containing suggestive or prurient material, and plaintiff's advertising required extensive edi-

torial effort by defendant's employees to meet defendant's published standards. A copy of defendant's standards was annexed to the complaint as an exhibit.

Defendant's motion for summary judgment under GCR 1963, 117 for dismissal of plaintiff's action, set forth that "plaintiff has failed to state a claim upon which relief can be granted" and further stated in part:

"said newspaper being a purely private business and, therefore, free to contract with and do business with whomsoever the publishers thereof see fit, and conversely, free to refuse to contract with and do business with any parties they choose to reject."

Plaintiff asserted in his oral argument on hearing of the summary judgment motion that a newspaper is affected with a public interest and that his complaint contains allegations of fact that require such a determination as a matter of law or a least raise a question of fact to be determined on the merits. These allegations to which plaintiff refers, appear in the footnote.* Plaintiff did not request of the trial court the right to present proofs, did not submit affidavits, or make any offer of proof.

---

* "That the defendant's Battle Creek Inquirer and News is presently the only daily newspaper published in or around the city of Battle Creek, Michigan; that said newspaper has a circulation of approximately 40,000 persons, and covers a geographical area of approximately four counties in southwestern Michigan and reaches a population of approximately 125,000 people and as such enjoys a general dependence upon it by the public, and is thereby clothed with a public interest as evidenced by legislative regulations and also by being the principal source of local and national news, weather reports, sheriff's sales, proceedings of city and county governmental units and their financial reports, sales of county and municipal bonds, notices of reception of bids for public contracts, rates of taxation, appointment of fiduciaries, notices of service of process by publication and other kinds of public and legal notices required to be published in newspapers by the Michigan legislature as well as being the sole source of commercial advertising for a substantial number of business establishments located within or near the city of Battle Creek."

The trial court made a finding that it could not under the existing law determine that the publishing of a newspaper is affected with a public interest, and therefore granted the motion for summary judgment and dismissed plaintiff's complaint.

Plaintiff has appealed and raises several questions for review. Plaintiff first asks, is defendant-appellee newspaper clothed with a public interest so that it is rendered amenable to reasonable regulations and demands of the public?

Plaintiff cites the case of *Uhlman* v. *Sherman* (1919), 22 Ohio NP (NS) 225 (31 Ohio Dec 54) as authority for his position. That case dealt with the complaint of plaintiff, a merchant whose advertisements had been refused publication in defendant's newspaper. The cause was heard and submitted on a motion by plaintiff for a temporary restraining order against 3 defendants who were competitors of plaintiff charged with conspiring to influence defendant newspaper to refuse plaintiff's advertisements and for the issuance of a mandatory injunction against the defendant newspaper to require it to accept such advertising.

The court in disposing of the matter said (pp 227, 228):

"Ordinarily, persons can not be forced into contracts. There is absolute freedom on the part of each party negotiating to accept or reject the offer made by the other.

"The supreme court of Ohio, *In re Steube,* 91 Ohio St 135, 139, quotes section 1, article 1 of the Constitution of Ohio, and then says:

" 'The right to contract is recognized as a property right essential to the acquisition, possession and protection of property.' * * *

"We will consider these two claims separately.

"First. Does the publisher of a newspaper stand exactly in the same relation to the general public as

the keeper of a hotel or the manager of a place of amusement? We think not.   *   *   *

"We come now to the second contention that the Crescent Publishing Company is a *quasi* public corporation and by virtue of the fact that it sells advertising space to one or more in a certain class that it must also sell such space to others of that class if they desire it.

"This claim is founded on the theory that the defendant printing company is so 'affected with a public interest' that it is a *quasi* public corporation.

"Section 570 of Elliott on Contracts treats of such corporations as follows:

" 'There is a class of corporations so "affected with a public interest" that they are often called *quasi* public corporations, although they are private corporations rather than public in the true sense. Railroad companies, street railway companies, canal companies and turnpike companies are of this character. So are gas and water companies, telegraph and telephone companies, heating companies and the like. The general principles of the law of contracts, already considered, apply in the main where such corporations are parties as well as other cases; but there are some distinctions and some peculiar applications of the rules to their contracts, which are more subject to legislative control, in some respects, than those of ordinary strictly private corporations; and they have public duties to perform that may limit the power to contract, or even require them to contract, in effect at least, in certain instances.'

"In section 571 the author further says:

" 'In general, a corporation affected with a public interest has all the attributes and incidents of a private corporation, and as a general rule is accorded the same measure of legal constitutional protection for itself and its members as is given private corporations. But contracts entered into by a *quasi* public corporation in the discharge of its public duty may differ fundamentally from the ordinary contract and the rules which govern it. The relation between a

public service corporation and its patrons is consensual. But there is this difference; the corporation must accept the application of the would-be patron if it is one he is entitled to make and if he complies with the reasonable rules of the company.' * * *

"In this case, if it is the rule of the defendant printing company not to accept from any merchant advertisements of sales of the so-called bankrupt class of merchandise, then it would be no discrimination against the plaintiff to refuse to receive that character of an advertisement from him. We hold, however, that whenever the defendant printing company has advertising space to sell and the plaintiff in his application for advertising space complies with the law and the reasonable rules of the said company as to the kind and character of the advertisement offered, and tenders the regular and ordinary fee therefor, that the printing company is bound to accept it."

We do not find nor has there been cited any Michigan case in point. We therefore, in order to ascertain the prevailing law pertaining to the subject, turn for enlightenment to 87 ALR 979:

"An annotation in 35 ALR 7 [Constitutional Law, §§ 294, 458, 735, 791] discusses the constitutionality of statutes regulating newspapers or magazines.

"With the exception of one case, *Uhlman* v. *Sherman* (1919), 22 Ohio NP (NS) 225 (31 Ohio Dec 54) (set out *infra*), it has been uniformly held in the few cases which have considered the question that the business of publishing a newspaper is a strictly private enterprise, as distinguished from a business affected with a public interest, and that its publisher is under no legal obligation to sell advertising to all who may apply for it."

The following cases are cited supporting this statement of the law: *In re Louis Wohl, Inc.* (DC ED

Mich 1931), 50 F2d 254; *Friedenberg* v. *Times Pub. Co.* (1930), 170 La 3 (127 So 345); *Lake County* v. *Lake County Pub. & Printing Co.* (1917), 280 Ill 243 (117 NE 452); *Belleville Advocate Printing Co.* v. *St. Clair County* (1929), 336 Ill 359 (168 NE 312); *Wooster* v. *Mahaska County* (1904), 122 Iowa 300 (98 NW 103); *State, ex rel. Baraboo,* v. *Page* (1930), 201 Wis 262 (229 NW 40); *Mack* v. *Costello* (1913), 32 SD 511 (143 NW 950, Ann Cas 1916A, 384). The recent case of *Approved Personnel, Inc.,* v. *Tribune Company* (Fla, 1965), 177 So 2d 704, is added as a case ruling that a newspaper is not affected with a public interest.

The case of *Shuck* v. *Carroll Daily Herald* (1933), 215 Iowa 1276 (247 NW 813, 87 ALR 975) involved an appeal by plaintiff from a judgment in the trial court dismissing an action brought to restrain defendant from refusing to accept and publish proper advertisements furnished by him upon payment of the required fee. On pp 1279, 1280 it is stated in part as follows:

"The appellant's case here is bottomed on the case of *Uhlman* v. *Sherman* which decision is reported in 22 Ohio NP (NS) 225. The *Uhlman Case* has been before two respectable courts since it was given forth, the United States district court in Michigan and the supreme court of Louisiana. Both have refused to follow it.

"In *Friedenberg* v. *Times Pub. Co.,* 170 La 3 (127 So 345), the court said: 'The weight of authority is that the publishing of a newspaper is a strictly private enterprise, and the publishers thereof are free to contract and deal or refuse to contract and deal with whom they please. [Citing cases.] And at any rate, it is for the legislature, and not for the courts, to declare that a business has become impressed with a public use. * * * There is, however, one case holding the contrary doctrine, to wit, *Uhlman* v.

*Sherman,* 22 Ohio NP (NS) 225. But we prefer to follow the weight of authority.'

"*In re Louis Wohl, Inc.* (DC ED Mich), 50 F2d 254, 256, the court said: 'Coming to the specific application of the doctrine invoked, the only case specifically holding a newspaper to be clothed with a public interest is the decision of the nisi prius court of Ohio in the case of *Uhlman* v. *Sherman,* 22 Ohio NP (NS) 225, *supra.* It is interesting to note that there the nisi prius judge frankly admitted that learned and diligent counsel on both sides were unable to find a parallel case, and that he himself had been unable to find one. \* \* \* I find \* \* \* that there is no such trend of decision as the trustee urges. A newspaper is not at the common law a business clothed with a public interest.'

"In the case of *Mack* v. *Costello,* 32 SD 511, 515 (143 NW 950, 951, Ann Cas 1916A, 384), the court said: 'The publication of a newspaper is strictly a private business. It may be begun or discontinued at the will of the publisher. The publisher, in publishing a newspaper, assumes no 'office, trust, or station,' in a public sense, nor enters into any public or contractual relation with the community at large. It may be that the publishing of a newspaper is a quasi public business; but, if so, it is only because, from long existence, it is regarded as a public necessity. But as much might be said of the hardware or grocery business, and yet no one would contend that a grocer or hardware dealer could be compelled by mandamus to sell his wares if he preferred to keep them on his shelf.'

"Since the *Uhlman Case* was decided, the Pennsylvania and Massachusetts courts have spoken on the same subject, without citing that case, and have arrived at a different conclusion. *Philadelphia Record Co.* v. *Curtis-Martin Newspapers,* 305 Pa 372 (157 A 796, 797); *Commonwealth* v. *Boston Transcript Co.,* 249 Mass 477 (144 NE 400, 35 ALR 1). \* \* \*

"The newspaper business is an ordinary business. It is a business essentially private in its nature— as private as that of the baker, grocer, or milkman, all of whom perform a service on which, to a greater or less extent, the communities depend, but which bears no such relation to the public as to warrant its inclusion in the category of businesses charged with the public use. If a newspaper were required to accept an advertisement, it could be compelled to publish a news item. If some good lady gave a tea, and submitted to the newspaper a proper account of the tea, and the editor of the newspaper, believing that it had no news value, refused to publish it, she, it seems to us, would have as much right to compel the newspaper to publish the account as would a person engaged in business to compel a newspaper to publish an advertisement of the business that that person is conducting.

"Thus, as a newspaper is a strictly private enterprise, the publishers thereof have a right to publish whatever advertisements they desire and to refuse to publish whatever advertisements they do not desire to publish."

That the *Uhlman Case, supra,* was not followed by another Ohio court is evidenced by the case of Sky High Theatre, Inc., *v.* The Gaumer Publishing Co. (unreported, No. 22,820) in the common pleas court of Champaign county. The court therein stated:

" 'Under the circumstances, is this court bound by the decision in the *Uhlman Case?* The judgment of the circuit court of one district is not conclusive authority upon the judges of another district though the view obtains that the decisions by one court should be followed in other circuits unless it clearly appears to the courts in the latter circuits that the decision is wrong. * * * *It should be followed unless it clearly appears to this court that the decision is wrong—which is the case.'* " (Emphasis supplied.)

The First Amendment to the Federal Constitution declares and safeguards the sanctity of freedom of the press. Our founding fathers recognized that well informed citizens are essential for the preservation of democratic institutions, and toward this end, an independent press is indispensable. The public interest, therefore, insofar as it affects the operation of a newspaper, demands that the press shall remain independent, unfettered by governmental regulation regardless of whether that regulation stems from legislative enactments or judicial decisions. There may come a time when the highest courts in our land may modify or alter the established common-law rules applicable to newspapers, or reasonable and constitutional regulations applied by statute. Until that time, we subscribe to and are bound by the prevailing authority, that a newspaper is strictly a private enterprise. Therefore, plaintiff's contention that defendant newspaper is in a business that is affected with a public interest must fall.

*Arguendo,* even under *Uhlman, supra,* plaintiff must fail. Defendant's refusal to publish plaintiff's advertising was because the advertising did not meet the published standards of defendant for motion picture advertising, and during the time plaintiff's advertisements were printed, defendant's staff had to expend a disproportionate amount of time to make them acceptable. The failure of plaintiff to show that defendant deviated from this policy is fatal because the essential element of discrimination is lacking.

The circuit court properly granted the motion for summary judgment dismissing the plaintiff's complaint.

Affirmed. Costs to defendant-appellee.

FITZGERALD and J. H. GILLIS, JJ., concurred.