480 P.2d 999

**Steve MODLA, Appellant,**

v.

**TRIBUNE PUBLISHING COMPANY, Inc., and Sun Valley-Spur Shopper, Appellees.**

**No. 1 CA–CIV 1278.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 24, 1971.

McCafferty & Loftus, by Gerald D. McCafferty, Phoenix, for appellant.

Kuhse, Petrie & Reynolds, by Joe S. Reynolds, Mesa, for appellees.

EUBANK, Judge.

The question raised by this appeal is whether a publisher of a newspaper, in the absence of a contractual obligation, has the right to refuse advertising submitted for publication.

On April 7, 1969, Steve Modla, hereinafter referred to as "plaintiff", filed a complaint against Tribune Publishing Company, Inc., and the Sun Valley Spur-Shopper both of Mesa, Arizona, hereinafter referred to as the "defendants", sounding in tort alleging generally that the plaintiff was the owner of real estate located in and around the City of Mesa, Arizona; that he had advertised with the defendants in the past and paid for all advertisements submitted; that on March 25, 1969, the defendants refused to accept any further advertisements from him; "* * * that said refusal was willful, malicious, intentional and without due cause."; and that as a result of such refusal he was damaged. The defendants appeared by filing a Rule 12(b), Rules of Civil Procedure, 16 A.R.S., motion to dismiss the complaint on the basis that it failed to state a claim. Following a hearing on the motion the trial court granted the defendants' motion. Plaintiff appeals from the formal written order of dismissal filed on November 21, 1969.

The precise question raised by plaintiff for review is as follows:

"Did the trial court err in granting defendants' motion to dismiss which in ef-

fect held that as a matter of law, defendants did not have to accept plaintiff's advertisements in their newspaper."

Plaintiff contends that the trial court erred in dismissing his claim; that his question on appeal must be answered in the affirmative and that the trial court's order be reversed. In support of his contention the plaintiff cites one case, Uhlman v. Sherman, 22 Ohio N.P.N.S. 225, 31 Ohio Dec. 54 (1919). This case held, *inter alia,* that:

"* * * the growth and extent of the newspaper business, the public favors and general patronage received by the publishers from the public, and the general dependence, interest, and concern of the public in their home papers, has clothed this particular business with a public interest, and rendered them amendable to reasonable regulations and demands of the public * * * that a newspaper company when it has advertising space to sell has no right to discriminate against a local merchant who, in his application for advertising, complies with the law and the reasonable rules of the newspaper company in reference to the character of his advertisement, and tenders the regular and ordinary fee charged therefor by said paper." (pp. 62–63, 31 Ohio Dec.)

Plaintiff acknowledges that Uhlman constitutes the minority rule, and that the majority rule, as announced in 39 Am.Jur., Newspapers & Press Ass'n, §§ 21, 22, which is contrary to his contention is strongly favored by the courts. He cites 87 A.L.R. 979, 981 (Annot: Right to Refuse Advertisement) which summarizes the law as follows:

"With the exception of one case, Uhlman v. Sherman (1919), 22 Ohio N.P.N.S. 225, 31 Ohio Dec. 54 * * *, it has been uniformly held in the few cases which have considered the question that the business of publishing a newspaper is a strictly private enterprise, as distinguished from a business affected with a public interest, and that its publisher is under no legal obligation to sell advertising to all who may apply for it." (p. 979, 87 A.L.R.)

The annotation was based, in part, on Shuck v. Carroll Daily Herald, 215 Iowa 1276, 247 N.W. 813, 87 A.L.R. 975 (1933). In Shuck the Iowa Supreme Court noted that in the cases of Friedenberg v. Times Pub. Co., 170 La. 3, 127 So. 345 (1930) and In Re Wohl (D.C.), 50 F.2d 254 (1931) both courts expressly rejected the Uhlman rule, as did Pennsylvania (Philadelphia Record Co. v. Curtis-Martin Newspapers, 305 Pa. 372, 157 A. 796 (1931)) and Massachusetts (Com. v. Boston Transcript Co., 249 Mass. 477, 144 N.E. 400 (1924), 35 A. L.R. 1) without citing it. The Iowa court went on to hold:

"The newspaper business is an ordinary business. It is a business essentially private in its nature—as private as that of a baker, grocer, or milkman, all of whom perform a service on which, to a greater or less extent, the communities depend, but which bears no such relation to the public as to warrant its inclusion in the category of businesses charged with the public use. * * *" (p. 1281, 215 Iowa, p. 815, 247 N.W., p. 978, 87 A.L.R.)

87 A.L.R. 979 has been revised and updated by 18 A.L.R.3d 1286 (Annot: Advertisement—Publisher's Refusal). The text, still citing Uhlman, supra, as the only exception to the majority rule, summarizes the majority rule as "universally held" and cites the more recent cases in further support of it. North Station Wine Co. v. United Liquors, 323 Mass. 48, 80 N.E.2d 1 (1948); Gordon, Inc. v. Worcester Tel. Publishing Co., 343 Mass. 142, 177 N.E.2d 586 (1961); Camp-of-the-Pines, Inc. v. New York Times Co., 184 Misc. 389, 53 N.Y.S.2d 475 (1945); Chronicle & Gazette Publishing Co. v. Atty. Gen., 94 N.H. 148, 48 A.2d 478 (1946), 168 A.L.R. 879, app. dismissed, 329 U.S. 690, 67 S.Ct. 495, 91 L.Ed. 604, reh. den., 329 U.S. 835, 67 S.Ct. 632, 91 L.Ed. 707; Poughkeepsie Buying Service v. Poughkeepsie Newspapers, 205 Misc. 982, 131 N.Y.S.2d 515 (1954); Mid-

West Electric Co-operative, Inc. v. West Texas Chamber of Commerce, 369 S.W.2d 842 (1963, Tex.Civ.App.); Approved Personnel, Inc. v. Tribune Co., 177 So.2d 704, 18 A.L.R.3d 1277 (1965, Fla.App.); Bloss v. Federated Publications, Inc., 5 Mich. App. 74, 145 N.W.2d 800 (1966).

The rationale of the majority of the above cited cases is that at common law a newspaper was strictly a private enterprise and not a business clothed or affected with a public interest. In particular see Shuck, supra. In a special concurring opinion in Phoenix Newspapers, Inc. v. Superior Court, 101 Ariz. 257, 263, 418 P.2d 594, 600 (1966), Justice Bernstein would place the emphasis on the first amendment of the United States Constitution rather than on the common law. He notes that at common law newspapers were at times heavily censored by the Crown, while the founding fathers of our Republic flatly rejected such control by enacting the first amendment. See also, Woods, Suppression of the Press, 10 Ariz.L.R. 315. In either case the result is the same.

No Arizona authority is cited by either party to support their respective positions on appeal and we can find none directly in point. However, Article 2, Section 6, of the Arizona Constitution, A.R.S. is of assistance. It reads:

"Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."

In the Phoenix Newspapers, Inc. case, supra, our Supreme Court held that this provision meant that a court could not in advance of publication limit the right of a newspaper to print the news and inform the public of events that occurred in open court in the course of a judicial hearing. At page 259, 101 Ariz., at page 596, 418 P. 2d, the court said:

"The words of the Arizona Constitution are too plain for equivocation. The right of every person to freely speak, write and publish may not be limited but such a person may be held accountable for an abuse of that right. There can be no

censor appointed to whom the press must apply for prior permission to publish for, as the Supreme Court of California said in 1896, in construing a constitutional provision which in part consisted of identical language, 'It is patent that this right to speak, write, and publish cannot be abused until it is exercised, * * *. (case cited)."

But does this broad protection include advertising? The Supreme Court in Planned Parenthood Committee v. Maricopa County, 92 Ariz. 231, 375 P.2d 719 (1962), after defining the words "publish" and "advertisement" as used in A.R.S. § 13–213, which prohibits the publishing of a notice or advertisement to produce abortion, drew a distinction between the news distribution and editorial comment rights guaranteed by the state and federal Constitutions and the state regulation of advertising. At page 240, 92 Ariz., page 725, 375 P.2d the court said:

"Moreover, there is authority for the proposition that advertising does not enjoy the same degree of protection under the First Amendment as do other non-commercial forms of idea expression. (cases cited)"

The court, then examining the public policy of the legislature in enacting A.R.S. § 13–213, held it sufficient to withstand the constitutional attack. The court, in passing, also pointed out examples of federal regulation of advertising, such as that granted the Federal Trade Commission under 15 U.S.C. §§ 52 and 55 and the Securities and Exchange Commission under 15 U.S.C. § 77b(10) et seq.

■ Plaintiff points to no public policy of the State of Arizona that supports his position and we have found none. We have no doubt but that the legislature in any situation involving the public health, safety or welfare can impose reasonable regulation on advertising. Planned Parenthood Committee v. Maricopa County, supra. However, under our system of government and the separation of powers (article III, Arizona Constitution), such mat-

ters rest initially and solely with the legislature and not with the judicial branch of government.

Our review of the authorities convinces us that the majority rule is sound and is the applicable law to be applied in the instant case. We therefore affirm the trial court's decision.

Judgment affirmed.

JACOBSON, P. J., and HAIRE, J., concur.