NEWSPAPER PRINTING CORPORA-
TION, Tennessean Newspapers, Inc. and
the Nashville Banner Publishing Compa-
ny, Petitioners,

v.

Charles GALBREATH, Respondent.

Supreme Court of Tennessee.

May 7, 1979.

Alfred H. Knight, III, Nashville, for petitioners; Willis & Knight, Nashville, of counsel.

Charles Galbreath, pro se.

## OPINION

BROCK, Justice.

The plaintiff, Charles Galbreath, sought to purchase from the defendant newspapers, Tennessean Newspapers, Inc., and The Nashville Banner Publishing Company, and their jointly controlled publishing company, defendant Newspaper Printing Corporation, advertising space for publication of the following advertisement:

"West End Area—Lge. apt. 4 rms. 1 b.r., Cent. heat and a/c Drps. Shag cpts. frost free ref. gar. dis. ds. washer. $145—352–4066."

The defendant, Newspaper Printing Corporation, to whom the proposed advertisement was submitted, refused to accept it in the foregoing form and agreed to publish it only after it was modified to read as follows:

"West End Area—Large apartment. 4 rooms. 1 bedroom. Central heat and air conditioning. Drapes. Shag carpet, frost free refrigerator. Garbage disposal. Dishwasher. $145. 352–4066."

The action of the defendants prompted the plaintiff, Galbreath, to file this class action in his own behalf and on behalf of all others similarly situated, seeking relief by way of a mandatory injunction requiring the defendant newspapers and their publishing company to "print all advertising, not violative of any law, as composed by the author of same upon the payment or offer of payment of the usual rate," and requiring "that the defendant cease censoring and modifying advertising copy submitted to it for publication by the plaintiff, Charles Galbreath, and all others similarly situated." The complaint also prayed for damages for "the excessive costs incurred because of the arbitrary, invalid and unconstitutional acts of the defendants," and for an award of reasonable attorneys fees and costs.

The plaintiff alleges that the defendants ". . . have a monopoly in the metropolitan area of Nashville, Tennessee, in that only through the latter defendant [Newspaper Printing Corporation] may advertisement in newspapers with large daily circulations be published. That because of this monopoly there is no competition and the plaintiff and others similarly situated have no recourse but to submit to the excessive charges resulting from the arbitrary refusal of the Newspaper Printing Corporation to accept advertising copy utilizing the universally recognized economical method of reducing advertising costs by using abbreviations recognized in the trade of the business involved.

"That the only reason the defendants refuse to permit liberal use of abbreviations in copy for advertisement is to unjustly enrich themselves at the expense of the advertiser consumer who, because of the monopoly enjoyed by the defendants, has no other source of advertisement in large daily newspapers in the area of the plaintiff's business activities."

The plaintiff further alleges that the refusal of the defendants to publish his tendered advertisement, as above quoted, was

"wrongful and arbitrary" and ". . . forced the plaintiff against his will to allow the advertisement to be censored and changed so as to eliminate the economical use of abbreviations as customarily permitted in other advertising markets of the nation in the newspapers, and, forced him to choose between not advertising his property or incurring the substantial additional expense of having the advertisement published without abbreviations so as to require 33½ percent more space and resulting costs."

In stating his legal theory, plaintiff alleges that the policy of the defendants in refusing to accept advertisements containing abbreviations is unreasonable, capricious and arbitrary ". . . and violative of the First Amendment to the Constitution of the United States and Art. I, § 19, of the Constitution of Tennessee, in that they restrict freedom of the press and because said policy and standards being direct outgrowths of a monopoly the resulting unfair competition is violative of Art. I, § 22, of the Constitution of Tennessee." [1]

The defendants filed a motion for summary judgment coupled with a motion to dismiss the complaint upon the ground that it failed to state a claim upon which relief could be granted. The Chancellor sustained the motion to dismiss, holding that the complaint failed to state a cause of action. Upon appeal, the Court of Appeals reversed the Chancellor's order of dismissal and remanded the case for trial on the merits. We granted the petition for certiorari filed by the defendants.

I

The publication of a newspaper is strictly the private business of its publisher, and it has been aptly observed that a publisher "in publishing a paper, assumes no 'office, trust, or station' in a public sense, nor does he enter into any public or contractual relation with the community at large. The rights and liabilities of newspaper publishers arising out of contracts are therefore governed by the rules applicable to contracts generally." 58 Am.Jur.2d *Newspapers, Periodicals, Etc.* § 20 (1971). Moreover, it is well settled in this country that a newspaper publisher is under no legal obligation to sell advertising to all who apply for it, and is not required to accept for publication any advertisement, although in proper form, even though the charge which the newspaper makes for publishing like advertisements is tendered. *Burke v. Kingsport Publishing Corporation,* 377 F.Supp. 221, *aff'd* 497 F.2d 923 (1974); *In re Louis Wohl, Inc.,* 50 F.2d 254 (Mich.App. 1931); *J. J. Gordon, Inc. v. Worcester Telegram Publishing Co.,* 343 Mass. 142, 177 N.E.2d 586 (1961); *Bloss v. Federated Publications, Inc.,* 5 Mich.App. 74, 145 N.W.2d 800 (1966), *aff'd* 380 Mich. 485, 157 N.W.2d 241 (1968); *Camp-of-the-Pines, Inc. v. New York Times Co.,* 184 Misc. 389, 53 N.Y.S.2d 475 (1945); *Approved Personnel, Inc. v. Tribune Company,* 177 So.2d 704, 18 A.L. R.3d 1277 (Fla.App.1965); *Shuck v. Carroll Daily Herald,* 215 Iowa 1276, 247 N.W. 813, 83 A.L.R. 975 (1933); *Friedenberg v. Times Pub. Co.,* 170 La. 3, 127 So. 345 (1930); *Mid-West Elec. Coop. v. West Texas Chamber of Comm.,* 369 S.W.2d 842 (Tex.Civ.App. 1963); *Modla v. Tribune Publishing Company,* 14 Ariz.App. 82, 480 P.2d 999 (1971).

Newspaper publishers may refuse to publish whatever advertisements they do not desire to publish and this is true even though the newspaper in question may enjoy a virtual monopoly in the area of its publication. *Shuck v. Carroll Daily Herald,*

---

1. As pertinent here, Art. I, § 19, of the Constitution of Tennessee provides:

   "That the printing presses shall be free to every person to examine the proceedings of the Legislature; or of any branch or officer of the government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions, is one of the invaluable rights of man, and ev-

   ery citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty."

   Art. I, § 22, of the Constitution of Tennessee provides:

   "That perpetuities and monopolies are contrary to the genius of a free State, and shall not be allowed."

supra; *J. J. Gordon, Inc. v. Worcester Telegram Publishing Co., supra; Mid-West Elec. Coop. v. West Texas Chamber of Comm., supra;* 66 C.J.S. *Newspapers* § 21c (1950). *Cf. Uhlman v. Sherman,* 31 Ohio Dec. 54, 22 Ohio N.P.,N.S., 225, *Herald Company v. Seawell,* 472 F.2d 1081 (Colo.App.1972). The publisher of a newspaper has the right to condition its acceptance of advertising upon its being in a form satisfactory to the newspaper and its being placed in a classification which, in the judgment of the newspaper, will result in a truthful and convenient disclosure to its readers. In short, since it may refuse to publish at all, it may require that advertisements submitted to it for publication comply with such rules and regulations as the publishers deem proper.

## II

The plaintiff asserts that the freedom of the press provisions of the First Amendment to the Constitution of the United States and of Art. I, § 19, of the Constitution of Tennessee impose a duty upon the defendants and create a correlative right in the plaintiff to publish his advertisements containing abbreviations, as hereinabove quoted. This assertion of the plaintiff is unsupported by either authority or reason. Indeed, the command of those constitutional provisions requires the opposite conclusion, *i. e.,* freedom of the press means freedom not to publish, as well as freedom to publish, as the publisher sees fit. As noted by the Iowa court in *Shuck v. Carroll Daily Herald, supra,* if a newspaper may be required to accept an advertisement, it may also be compelled to publish a news item or an editorial.[2]

2. Of course, freedom of the press, like other freedoms, is not absolute. Thus, the constitutional rights of others, such as the right to equal treatment under the equal protection clause of the Fourteenth Amendment, require the recognition of narrow exceptions to the otherwise complete freedom of the publisher to publish or refuse to publish as he pleases. *See, Pittsburgh Press Co. v. Pittsburgh Com'n on Human Rel.,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); *United States v. Hunter,* 459 F.2d 205 (4th Cir. 1972); Civil Rights Act of 1968, 42 U.S.C. § 3604(c). Nor does freedom

## III

The attempt by the plaintiff to rely upon the anti-monopoly provision of our Constitution is quite obscure; consequently, we are not certain what his theory is. He avers that the policy of the defendants in refusing to accept advertisements containing abbreviations is "unreasonable, capricious and arbitrary" and that

". . . said policy and standards, being direct outgrowths of a monopoly, the resulting unfair competition is violative of Art. I, § 22 of the Constitution of Tennessee."

He also alleges that the defendants

". . . have a monopoly in the metropolitan area of Nashville, Tennessee, in that only through the latter defendant (Newspaper Printing Corporation) may advertisements in newspapers with large daily circulations be published. That because of this monopoly there is no competition and the plaintiff and others similarly situated have no recourse but to submit to the excessive charges resulting from the arbitrary refusal of the Newspaper Printing Corporation to accept advertising copy utilizing the universally recognized economical method of reducing advertising costs by using abbreviations recognized in the trade of the business involved."

Both the Chancellor and the Court of Appeals have treated the complaint as alleging a violation of the Federal antitrust laws, a construction which we consider to be generous.[3]

of the press authorize the newspaper to "attempt to monopolize" in violation of the Sherman Antitrust Act. *Lorain Journal Co. v. United States,* 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951).

3. Since both parties and both lower courts have treated the case as one alleging a violation of the Federal antitrust laws, we confine our discussion to that theory and do not determine whether the anti-monopoly provision of Art. I, § 22, of the Constitution of Tennessee is self executing and may furnish the basis for a civil

The trial court held that the practice of the defendants in jointly refusing to accept for publication advertisements containing abbreviations such as that tendered by the plaintiff was authorized by the Newspaper Preservation Act, 15 U.S.C., §§ 1801, *et seq.,* thus furnishing no basis for an action by the plaintiff. Section 2 of that Act provides:

"Congressional declaration of policy

"In the public interest of maintaining a newspaper press editorially and reportorially independent and competitive in all parts of the United States, it is hereby declared to be the public policy of the United States to preserve the publication of newspapers in any city, community, or metropolitan area where a joint operating arrangement has been heretofore entered into because of economic distress or is hereafter effected in accordance with the provisions of this chapter [15 U.S.C.S., §§ 1801, *et seq.*]."

Also pertinent here is § 1802(2) which provides:

"As used in this chapter [15 U.S.C.S., §§ 1801, et seq.]—

\* \* \* \* \* \*

"(2) The term 'joint newspaper operating arrangement' means any contract, agreement, joint venture (whether or not incorporated), or other arrangement entered into by two or more newspaper owners for the publication of two or more newspaper publications, pursuant to which joint or common production facilities are established or operated and joint or unified action is taken or agreed to be taken, with respect to any one or more of the following: printing; time, method, and field of publication; allocation of production facilities; distribution; advertising solicitation; circulation solicitation; business department; establishment of advertising rates; establishment of circulation rates and revenue distribution; *Provided,* That there is no merger, combination, or amalgamation of editorial or

reportorial staffs, and that editorial policies be independently determined."

The Court of Appeals, while agreeing that the Newspaper Preservation Act applies, was of the opinion that the complaint alleged predatory pricing or practice which was not authorized by that Act. It relied upon § 4(c) of the Act which provides:

"Antitrust exemption[s]

\* \* \* \* \* \*

"Nothing construed in the chapter [15 U.S.C.S., §§ 1801, *et seq.*] shall be construed to exempt from any antitrust law any predatory pricing, any predatory practice, or any other conduct in the otherwise lawful operations of a joint newspaper operating arrangement which would be unlawful under any antitrust law if engaged in by a single entity. Except as provided in this chapter, no joint newspaper operating arrangement or any party thereto shall be exempt from any antitrust law."

The Court of Appeals further concluded that whether the joint advertising policy of the defendants constituted predatory pricing or practice presented a factual issue which required that the motion for summary judgment be denied. Accordingly, that court reversed the judgment of the trial court and remanded for a trial on the merits.

■ The refusal of a newspaper to accept tendered advertising because it fails to meet the standards required by the publisher, whether acting singly or jointly, does not amount to "predatory pricing or practice," as those terms are used in the antitrust laws. As used in such laws, "predatory" refers to pricing or other action aimed at competitors rather than the "gouging" of consumers. *See, International Air Ind., Inc. v. American Excelsior Co.,* 517 F.2d 714, 722 (5th Cir. 1975).

It has been held that the rejection by a newspaper, acting singly, of advertising be-

action by one who claims that another has violated that provision. *See, The Charles River Bridge v. The Warren River Bridge et al.,* 36

U.S. 420, 11 Pet. 420, 9 L.Ed. 773 (1837); *Leeper v. State,* 103 Tenn. 500, 53 S.W. 962 (1899); 58 C.J.S. *Monopolies* §§ 1, 27 (1948).

cause it does not meet the publisher's requirements does not violate the antitrust laws. *Staff Research Associates, Inc. v. Tribune Company,* 346 F.2d 372 (7th Cir. 1965).

 It follows, then, that the joint action of the defendants in refusing to accept such advertising does not come within the exception contained in § 4(c) of the Newspaper Preservation Act, above quoted, it being one which would not be unlawful if engaged in by a single entity.

We, therefore, conclude that the Court of Appeals erred in reversing the judgment of the Chancellor and in remanding this case for trial on the merits. The judgment of the Court of Appeals is reversed and that of the trial court is affirmed. Costs incurred in this Court will be taxed against the respondent.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.