NORTH STATION WINE COMPANY, INC. *vs.* UNITED LIQUORS, LTD., & others.

Suffolk.   February 2, 1948. — June 8, 1948.

Present: QUA, C.J., LUMMUS, RONAN, & WILKINS, JJ.

*Unlawful Interference. Conspiracy. Equity Pleading and Practice,* Bill.

An allegation in a bill in equity merely that the plaintiff had been "advised" of an unlawful combination damaging the plaintiff, without any express allegation of the existence thereof, was not a sufficient pleading.

Allegations in a bill in equity by a retail liquor dealer against two newspaper proprietors and two wholesale liquor dealers, in substance that, pursuant to an agreement among the defendants and other newspaper proprietors that the newspapers would not accept advertising of a certain brand of rum at less than a specified price, the defendant newspaper proprietors had refused to accept from the plaintiff advertising of a sale by him of the rum at a lower price, did not support general conclusions in the bill that the defendants were guilty of "unlawful interference" with the plaintiff's business through an unlawful combination exercising "a peculiar power of coercion" upon him, nor did such allegations show that any defendant had induced any other defendant not to enter into a business relation with the plaintiff.

BILL IN EQUITY, filed in the Superior Court on April 28, 1947.

Interlocutory decrees sustaining demurrers to the bill were entered by orders of *Williams,* J., and of *Donahue,* J. A final decree dismissing the bill was entered by order of *Brogna,* J.

*L. Winer,* for the plaintiff, submitted a brief.

*Lee M. Friedman,* (*S. Werlin* with him,) for the defendant United Liquors, Ltd.

*S. H. Babcock,* (*J. H. B. Edwards* with him,) for the defendant National Distillers Corporation of New England.

*B. Aldrich,* for the defendant Boston Herald-Traveler Corporation.

*E. A. Whitman,* for the defendant Post Publishing Company, submitted a brief.

QUA, C.J. This suit is here on appeal of the plaintiff from a final decree dismissing the bill after the sustaining of separate demurrers of the four defendants. The plaintiff also appealed from only one of the interlocutory decrees sustaining the demurrers, but the others are "open to revision" upon the appeal from the final decree. G. L. (Ter. Ed.) c. 214, § 27. *Bressler* v. *Averbuck,* 322 Mass. 139, 140. The several demurrers are rested upon various grounds, but a ground common to all is that the bill states no cause of action.

The allegations of the bill are in substance these: The plaintiff conducts a retail liquor business. The plaintiff was obliged to purchase from the defendant United Liquors, Ltd., large quantities of a certain brand of rum at an average wholesale price of $3.01 per four fifths of a quart in order to procure from that defendant other brands of liquors. The plaintiff has been able to sell only a small part of this rum and cannot sell it at a price based on the wholesale cost plus a reasonable mark up. In order to recoup part of its loss, the plaintiff submitted to the defendants Boston Herald-Traveler Corporation and Post Publishing Company copy advertising the rum for sale at $1.89 per four fifths of a quart. Both newspapers refused to advertise that brand of rum at that price. Failure of these defendants to accept the plaintiff's advertising copy "would substantially affect" the plaintiff's plan to dispose of its rum. The plaintiff "was advised by an officer" of the defendant United Liquors, Ltd., that "an agreement had been entered into" among that defendant, the three other defendants, National Distillers Corporation of New England, Boston Herald-Traveler Corporation, and Post Publishing Company, and "other widely circulated newspapers doing business in Boston" whereby "the newspapers," including the two

newspaper defendants in this suit, "agreed" not to accept advertising of the brand of rum in question at a price of less than $3.81 per four fifths of a quart.   This brand of rum "has not been fair traded" [1] in Massachusetts, and the attempts of all the defendants to control its price are "improper and . . . in violation of the rights" of the plaintiff so to dispose of its rum as to salvage a part of its investment. Except for the "agreement" entered into by all the defendants, the plaintiff would have been able to procure some widely read newspaper in Boston to accept its advertising, and the refusal of one newspaper to accept its advertising would not have seriously prejudiced the plaintiff, but the "agreement" among all the defendants "creates a peculiar power of coercion possessed by them in combination which would not be effective without such agreement . . .." The fair market value of the rum is not in excess of $1.89 per four fifths of a quart, and the combination of the defendants by their concerted action to maintain its price at $3.81 per four fifths of a quart "is a fraud on the general public and unlawful interference with" the plaintiff's right "to normally transact his [*sic*] business in accordance with duly accepted advertising methods."   The acts of the defendants, by their force of numbers and their power in the control of the press and their influence, have created a combination, "which by its very power and influence, is interfering with" the plaintiff's business and constitutes an unlawful conspiracy as it affects the plaintiff and will cause substantial loss to the plaintiff from its failure to sell its rum at a price which it considers fair.

The prayers are that the defendants United Liquors, Ltd., and National Distillers Corporation of New England be ordered to instruct the newspaper defendants "to the effect that they have no objection to the advertising" by said newspapers of the rum at the prices submitted by the plaintiff; that the newspaper defendants be ordered to accept the plaintiff's advertising at prices for the rum to be stipulated by the plaintiff; and for damages and further relief.

---

[1] See G. L. (Ter. Ed.) c. 93, §§ 14A–14D, as inserted by St. 1937, c. 398 as amended.

The allegation that the plaintiff was obliged to purchase the rum at a certain price in order to obtain other liquors seems to have no relation to the remainder of the bill and is immaterial. The gist of the plaintiff's grievance, if it has a grievance, seems to be that the two defendant newspapers refused to advertise its rum at the price at which the plaintiff desired to have it advertised.

The plaintiff argues that this refusal was in consequence of an unlawful "agreement" or combination among all the defendants and including newspapers not defendants, and that damage will result to the plaintiff. We agree that even if a newspaper, acting alone, is commonly at liberty to reject such advertising as it sees fit (see *Commonwealth* v. *Boston Transcript Co.* 249 Mass. 477), it and its associates may be amenable to suit, as any other parties would be, if they have joined in an unlawful combination causing harm to the plaintiff through the peculiar force of numbers. See *Des-Lauries* v. *Shea*, 300 Mass. 30, 33; *Comerford* v. *Meier*, 302 Mass. 398, 401; *Fleming* v. *Dane*, 304 Mass. 46, 49–51; *Weiner* v. *Lowenstein*, 314 Mass. 642, 646–647; Restatement: Torts, § 765. But, to begin with, we find in the present bill no sufficient allegation of combination. Averments of crucial facts in a pleading should be clear, direct and unequivocal. An allegation merely that the party pleading has been informed or, as here, "advised," of such a fact, followed in the remainder of the pleading by references assuming the truth of the fact but without any express allegation that it is true, is not enough as against a demurrer. *Dealtry* v. *Selectmen of Watertown*, 279 Mass. 22, 27. *I. T. S. Rubber Co.* v. *Essex Rubber Co.* 281 Fed. 5, 10. See *Fuller* v. *Lovell*, 304 Mass. 542, 546; *Mairs* v. *Madden*, 307 Mass. 378, 380–381; *Carson* v. *Gikas*, 321 Mass. 468. In the second place, even if the fact of combination were sufficiently alleged, we think there are no such allegations of the character, purpose, and effect of the combination as to make out a prima facie case against any of the defendants and to call for an answer. The only harm alleged is that the two newspapers carried out their agreement not to advertise the particular brand of rum at less than $3.81 per four fifths of a

quart. This seems to fall short of the kind of intentional invasion of a known and well recognized right of the plaintiff which commonly calls for affirmative justification by a defendant. The case differs in this respect from the recent case of *Owen* v. *Williams*, 322 Mass. 356. A combination so to limit advertising would not seem to have been directed against the plaintiff. It might well have been thought to be in the interest of the plaintiff and other dealers as a protection against cut prices. No motive of injuring the plaintiff is alleged. There is no discrimination against the plaintiff as compared with other dealers. There is nothing more than a suggestion or insinuation that there are not other newspapers outside the combination in which the plaintiff can advertise at any price it wishes. It does not appear that other effective methods of advertising are not open to it. The allegations of "a peculiar power of coercion," of "fraud on the general public," and of "unlawful interference" are mere generalizations unsupported by the necessary allegations of particular facts. *Johnson* v. *East Boston Savings Bank*, 290 Mass. 441, 446–447. *McCarthy* v. *Hawes*, 299 Mass. 340, 344. *Neustadt* v. *Employers' Liability Assurance Corp. Ltd.* 303 Mass. 321, 326. *Mairs* v. *Madden*, 307 Mass. 378, 380–381. *Foster* v. *Shubert Holding Co.* 316 Mass. 470, 474. In short, the bill fails to show the unlawful quality of the combination, if there was a combination. The plaintiff is at least in no better position than was the plaintiff in *Neustadt* v. *Employers' Liability Assurance Corp. Ltd.* 303 Mass. 321, 324–326, by which this case, so far as it depends upon combination, would seem to be governed. In point also are *Robitaille* v. *Morse*, 283 Mass. 27, 33, and *Foster* v. *Shubert Holding Co.* 316 Mass. 470, 475. See *Boylston Housing Corp.* v. *O'Toole*, 321 Mass. 538, 550; *Martell* v. *White*, 185 Mass. 255. Compare *Tompkins* v. *Sullivan*, 309 Mass. 496, 500.

The bill does not allege that any or all of the defendants have created a monopoly at common law. There is nothing to show that they have acquired or will acquire in the rum trade a dominating influence tending to suppress competition. *Commonwealth* v. *Dyer*, 243 Mass. 472, 486. *Foster*

v. *Shubert Holding Co.* 316 Mass. 470, 472.    See *Associated Perfumers, Inc.* v. *Andelman,* 316 Mass. 176, 183–184. Neither does violation of G. L. (Ter. Ed.) c. 93, § 2, appear. It does not appear that the particular brand of rum is an "article or commodity in common use," and if rum in general is such an article, it does not appear that with respect to rum in general the alleged agreement has any appreciable tendency to restrain or prevent competition or to enhance prices.    See *Commonwealth* v. *North Shore Ice Delivery Co.* 220 Mass. 55; *Berenson* v. *H. G. Vogel Co.* 253 Mass. 185; *Keith* v. *Heywood Boot & Shoe Co.* 255 Mass. 321, 324; *Foster* v. *Shubert Holding Co.* 316 Mass. 470.   We need not consider what the remedy would be if violation of the statute appeared.   See G. L. (Ter. Ed.) c. 93, §§ 3–7.

Finally, we do not agree with the plaintiff that the bill can stand on the theory that the several defendants, or some of them, have induced the newspapers not to enter into a business relation with the plaintiff.    See Restatement: Torts, § 766.   It is plain that the bill was not drawn on any such theory.   It does not allege that any defendant induced or caused any other defendant not to do what it would otherwise have done.   So far as appears each defendant was as much an originator and as much an active moving party in bringing about the "agreement" as any other defendant.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*