## J. J. Gordon, Inc. & another *vs.* Worcester Telegram Publishing Co. Inc.

Worcester.    September 26, 1961. — November 6, 1961.

Present: Wilkins, C.J., Spalding, Williams, Whittemore, & Kirk, JJ.

*Newspaper. Advertising. Pleading, Civil,* Declaration, Demurrer.

Allegations in the declaration in an action that certain conduct of the defendant was "without just cause" and "maliciously," without supporting allegations of fact, were mere general conclusions not admitted by a demurrer.    [143]

An allegation in a declaration that a newspaper was a "public utility" was a conclusion of law not admitted by a demurrer.    [143]

Under the law of Massachusetts, a newspaper is not a public utility. [143]

A publisher of a newspaper who enjoyed a "monopoly" of the newspaper business in a certain area because there was no other newspaper of general circulation in that area would not be liable in tort to a real estate dealer by reason of the mere fact that the publisher refused to accept from the dealer for publication advertising which was important to the dealer's business.    [143–145]

Tort.    Writ in the Superior Court dated March 18, 1961. The action was heard by *Meagher, J.*, on demurrer.

*Edward A. Brodeur,* for J. J. Gordon, Inc.

*Jacob J. Gordon,* pro se, submitted a brief.

*Duane T. Sargisson,* for the defendant.

Spalding, J.    This action of tort is brought by two plaintiffs, a corporation and an individual.    The declaration, which is in one count, alleges the following: The corporate plaintiff is engaged in the business of buying and selling real estate in and around Worcester.    The defendant is the owner and publisher of three newspapers in Worcester, the Worcester Daily Telegram, the Worcester Evening Gazette, and the Worcester Sunday Telegram, which are the only newspapers with a general circulation in the Worcester area.    "Said newspapers . . . are a public utility therein,

and have an absolute monopoly of the business conducted thereby.'' For over a year prior to March 15, 1961, the ''plaintiffs have freely advertised their business in said newspapers'' and such advertising is an ''absolute necessity to the carrying on of the said business of the plaintiffs.'' On or about March 15, 1961, the defendant ''cancelled an advertisement after one publication thereof and . . . [has] since without just cause, maliciously refused and continues to refuse to accept for publication in [its] . . . newspapers further advertising by the plaintiff corporation.''

The defendant demurred and its demurrer was sustained. The plaintiffs appealed. Of the grounds set forth in the demurrer we need consider only the first: ''That the facts alleged in the declaration are insufficient in law to constitute an action in tort.''

We are of the opinion that the demurrer was rightly sustained. We lay to one side epithets such as ''without just cause,'' and ''maliciously.'' General conclusions of this nature without allegations of fact sufficient to support them are not admitted by the demurrer. *Dealtry* v. *Selectmen of Watertown,* 279 Mass. 22, 26–27. *Caverno* v. *Fellows,* 286 Mass. 440, 442–443. *McCarthy* v. *Hawes,* 299 Mass. 340, 344. *Jacobs* v. *Mann,* 300 Mass. 258. *Foster* v. *Shubert Holding Co.* 316 Mass. 470, 474. The allegation that the defendant is a ''public utility'' is a conclusion of law and is not admitted by the demurrer. *Fleming* v. *Dane,* 298 Mass. 216, 218. Moreover, we judicially know that under our law a newspaper is not a public utility. Thus the question narrows to whether the publisher of a newspaper who enjoys a virtual monopoly in a given area by reason of the fact that there are no other papers of general circulation in that area may refuse to accept an advertisement if he sees fit to do so.

It has generally been held that the publication and sale of newspapers is a private enterprise as distinguished from a business affected with a public interest and that those engaged in such a business are free to deal with whomever

they choose. *Journal of Commerce Pub. Co.* v. *Tribune Co.* 286 Fed. 111 (7th Cir.). *In re Louis Wohl, Inc.* 50 F. 2d 254 (E. D. Mich. S. D.). *Shuck* v. *Carroll Daily Herald,* 215 Iowa, 1276. *Friedenberg* v. *Times Pub. Co.* 170 La. 3. *Lepler* v. *Palmer,* 150 Misc. (N. Y.) 546, 550. *Poughkeepsie Buying Serv. Inc.* v. *Poughkeepsie Newspapers, Inc.* 205 Misc. (N. Y.) 982. *Philadelphia Record Co.* v. *Curtis-Martin Newspapers, Inc.* 305 Pa. 372, 374. *Mack* v. *Costello,* 32 S. D. 511, 515–516. See *Commonwealth* v. *Boston Transcript Co.* 249 Mass. 477, 484–485; *Lorain Journal Co.* v. *United States,* 342 U. S. 143, 155; *Times-Picayune Publishing Co.* v. *United States,* 345 U. S. 594, 624–625.

Although the precise question here involved has not often been before the courts, the prevailing view in the few cases that have considered the question — and in our opinion the correct one — is that the publisher of a newspaper is under no obligation to accept advertising from all who may apply for it. *Shuck* v. *Carroll Daily Herald,* 215 Iowa, 1276. *Friedenberg* v. *Times Pub. Co.* 170 La. 3. *Poughkeepsie Buying Serv. Inc.* v. *Poughkeepsie Newspapers, Inc.* 205 Misc. (N. Y.) 982. Our decision in *Commonwealth* v. *Boston Transcript Co.* 249 Mass. 477, points in this direction. There it was held that a penal statute requiring a newspaper to publish at its regular rates the findings of a minimum wage commission was unconstitutional on the ground, among others, that it curtailed the publisher's freedom of contract. We have found but one case (*Uhlman* v. *Sherman,* 22 Ohio N. P. [N. S.] 225, a nisi prius decision) which holds the contrary.

Section 762 of the Restatement: Torts, states that one "who causes intended or unintended harm to another merely by refusing to enter into a business relation with the other or to continue a business relation terminable at his will is not liable for that harm . . . [with several exceptions not relevant to the present case]." Section 763 states that the law is otherwise if the defendant's business is a public utility. That the public has a strong interest in the operation of the newspaper publishing business no one

can deny.  However, the public's concern with the interest of an advertiser is somewhat less than its concern in the case of one who has been denied news service.  See *Associated Press* v. *United States,* 326 U. S. 1; *Inter-Ocean Publishing Co.* v. *Associated Press,* 184 Ill. 438; "Public Service Corporations — Newspapers as Affected with a Public Interest," 80 U. Pa. L. Rev. 314, 315, n. 12.  Furthermore, this is not a case where the defendant's refusal to deal puts the plaintiffs out of business; rather, the result is that the plaintiffs are being denied access to one medium of advertising, admittedly important to their business.  Where a publisher's refusal to accept advertisements is in furtherance of an illegal monopoly or other unlawful purpose, a very different question is presented.  See *Robitaille* v. *Morse,* 283 Mass. 27; *Foster* v. *Shubert Holding Co.* 316 Mass. 470, 475; *North Station Wine Co. Inc.* v. *United Liquors, Ltd.* 323 Mass. 48, 51; *Lorain Journal Co.* v. *United States,* 342 U. S. 143, 155; Restatement: Torts, §§ 764, 765.  But no such question is involved here.

> *Order sustaining demurrer affirmed.*
> *Judgment for the defendant.*