# OPINION OF THE JUSTICES.

OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law,* Due process of law, Police power, Freedom of the press, Freedom of speech. *Gambling. Racing.*

Proposed legislation, which by certain provisions would proscribe any transmission, communication, receipt or securing of any information about horse or dog races during specified periods of time, and by other provisions would proscribe the transmission of "racing information" "by any means whatsoever" "when the information is knowingly used or intended to be used for illegal gambling purposes, or in furtherance of such gambling," would be unconstitutional both for vagueness and ambiguity and as infringing the rights of freedom of speech and freedom of the press.

On August 24, 1967, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions in an order adopted by the House of Representatives on July 31, 1967, and transmitted to us on August 2. The order recites the pendency before the General Court of a bill, House No. 358, a copy of which was transmitted with the order. The bill is entitled, "An Act regulating transmission of racing information for illegal gambling purposes." The order declares that grave doubt exists as to the constitutionality of the bill if enacted into law.

Other recitals in the order are that on July 24, 1967, the Governor returned the bill to the General Court without his signature, accompanied by a message which was printed as House No. 5084, a copy of which was submitted with the order. The order also recites that on May 26, 1967, the bill had been returned by the Governor to the General

Court, with recommendations for amendment, printed as House No. 4896, a copy of which was submitted with the order. Further recitals are that the bill in its original form was re-enacted by the General Court, and was laid before the Governor; that the Governor both in the message which accompanied his recommended amendments (House No. 4896) and in the message which accompanied his veto (House No. 5084) raised serious questions as to the constitutionality of the bill; that on July 27, 1967, the House voted not to pass the bill over the Governor's veto; and that a motion to reconsider that vote is now pending.

The bill amends G. L. c. 271, entitled "Crimes against Public Policy," by striking out § 31A (inserted by St. 1964, c. 330), and substituting a new § 31A, which in its entirety is as follows:

"Section 31A. (a) It shall be unlawful for any person to transmit or communicate to another or receive or secure by any means whatsoever the results, changing odds, track conditions, jockey changes, or any other information relating to any horse race or dog race from any race track in this state, between the period of time beginning one hour prior to the first race of any day and ending thirty minutes after the posting of the official results of each race as to that particular race, except that the foregoing limitations shall not apply to the results of the last race of each day's meet; provided, however, that the state racing commission may, by rule permit the immediate transmission by radio, television, or press wire of any pertinent information concerning not more than two feature races each week; provided, further, that the foregoing limitation of two feature races per week shall not apply to so-called 'name stake races' which if broadcast or televised nationally the commission may in its discretion permit.

"(b) It shall be unlawful for any person to transmit by any means whatsoever racing information to any other person, or to relay the same to any other person by word of mouth, by signal, or by use of telephone, tele-

graph, radio, or any other means, when the information is knowingly used or intended to be used for illegal gambling purposes, or in furtherance of such gambling.

"(c) This section shall be deemed an exercise of the police power of the state for the protection of the public welfare, health, peace, safety, and morals of the people of the state and all of the provisions herein shall be liberally construed for the accomplishment of this purpose.

"(d) Any person violating the provisions of this section shall be guilty of a felony and, upon conviction thereof, shall pay a fine of not less than five hundred dollars nor more than five thousand dollars, or undergo imprisonment for a period of not less than two and one half nor more than five years, or both, in the discretion of the court.

"(e) Nothing contained in this section shall be construed as amending or repealing the provisions of any other law or affecting any rule of the public utilities commission, relating to the regulation of public utilities in the furnishing to others of any communication, wire service, or other similar service or equipment; it is intended that this section shall be supplemental to other laws and a further aid in the elimination of transmission of information for illegal gambling purposes."

The questions are:

"1. Would House, No. 358 if enacted into law violate the provisions of Article XII of Part the First of the Constitution of Massachusetts, as indicated by His Excellency, the Governor, in his veto message (House, No. 5084)?

"2. Would said bill if enacted into law violate the provisions of the Fourteenth Amendment to the Constitution of the United States relative to the 'due process concept' as indicated by His Excellency, the Governor, in his veto message (House, No. 5084)?

"3. Would said bill if enacted into law violate the provisions of Article Sixteen of Part the First of the

· Constitution of Massachusetts and the First Amendment to the Constitution of the United States relative to freedom of speech and the press, as indicated by His Excellency, the Governor, in his veto message?''

It is convenient to consider the questions together.

The bill is in the identical words of a Florida statute.[1] Fla. Sts. (1965) c. 550.35.

The elimination of illegal gambling and legislative action to that end are a legitimate legislative aim and a proper subject for the exercise of the police power.

The transmission or communication of racing information, or the receiving or securing thereof, which is intended *solely* for the furtherance of illegal gambling may be prohibited. *Dunn* v. *Nevada Tax Commn.* 67 Nev. 173, 183. This cannot be said, however, of every transmission or communication of racing information. The Legislature's power is limited to the prohibition of such transmission or communication as is necessary to protect the public against injurious results. Suppression of the transmission or communication of racing information which does not tend to foster illegal gambling exceeds the Legislature's constitutional authority. *Parkes* v. *Judge of Recorder's Court,* 236 Mich. 460, 468.

The present concern is with legislation which may affect legitimate activities. The language of subsection (a) imposes an absolute restraint upon the transmission and communication of racing information within certain stated periods. A literal interpretation of its provisions would even prevent the track from disseminating any information to its patrons whether by use of the tote board, announcer, or otherwise. The obvious absurdity of such a conclusion, while militating against such an interpretation, points to the ambiguity inherent in this section. See *Cramp* v. *Board of Pub. Instruction of Orange County,* 368 U. S. 278, 286.

---

[1] The bill was also in Appendix F of the Fifth Report of the Massachusetts Crime Commission (May, 1965).

A narrow interpretation of the bill would require that the person transmitting or communicating racing information do so from within the boundaries of the race track[2] to a point outside the track, and that a person charged with receiving or securing racing information must have obtained the information from within the track while he was himself outside its physical boundaries. This apparently is the interpretation of a lower Florida court. *Witherspoon* v. *State,* 169 So. 2d 854, 855 (Fla.). Subsection (a), however, could be interpreted to include those who leave the track and then communicate racing information within the proscribed times.

Subsection (a) is vague and ambiguous in regard to the degree of intent, if any, required. It contains no specific requirement of intent. Compare *Demetropolos* v. *Commonwealth,* 342 Mass. 658; *Commonwealth* v. *Corey,* 351 Mass. 331, 332–333. By a possible interpretation of subsection (a) the mere act of communicating racing information from inside the track to one outside the track would create a presumption of illegal gambling activity.[3]

Subsection (b) presents a serious difficulty in that it is all inclusive, covering the transmitting of racing information or relaying such information by "word of mouth" or "by use of telephone, telegraph, radio, or any other means." Unlike subsection (a), subsection (b) requires knowledge and intent. But knowledge of a news medium that its distribution of racing news is used for illegal activities, nevertheless, does not justify improper interference with a free press. The ambiguity inherent in subsection (b) could be clarified by exemptions of news media or by reasonable restriction of the bill's application to them.

---

[2] The term "race track" is defined by G. L. c. 128A, § 1, inserted by St. 1934, c. 374, § 3: " 'Race track' shall include the track, grounds, auditorium, amphitheatre and/or bleachers, if any, and adjacent places used in connection therewith, where a horse or dog racing meeting may be held."

[3] General Laws c. 271, § 17A (as appearing in St. 1962, c. 440), and Mass. State Racing Commn. Rules of Horse Racing (1963), Rules 359, 359A, are deterrents to a race track making telephone service generally available to track patrons.

We think that both subsections (a) and (b) are reasonably susceptible of interpretations which would proscribe the legitimate exercise of a free press. Although, conceivably, the bill could be limited by judicial decision to those acts which are fairly within the purposes of the bill and outside constitutional protection, yet, because of the vagueness and ambiguities above referred to, the press might well be restrained from exercising its fundamental rights rather than risk possible prosecution. Such restriction itself raises a serious constitutional issue. See generally Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U. of P. L. Rev. 67 (1960). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally, Commr.* v. *General Constr. Co.* 269 U. S. 385, 391. See *Commonwealth* v. *Slome,* 321 Mass. 713, 715. *Commonwealth* v. *Carpenter,* 325 Mass. 519, 521. "The vice of unconstitutional vagueness is further aggravated where, as here, the statute in question operates to inhibit the exercise of individual freedoms affirmatively protected by the Constitution. . . . '[S]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser.' " *Cramp* v. *Board of Pub. Instruction of Orange County,* 368 U. S. 278, 287, quoting *Smith* v. *California,* 361 U. S. 147, 151. *Baggett* v. *Bullitt,* 377 U. S. 360, 368.

Our answer to each of the questions is, "Yes."

<div align="right">

RAYMOND S. WILKINS

JOHN V. SPALDING

ARTHUR E. WHITTEMORE

R. AMMI CUTTER

PAUL G. KIRK

JACOB J. SPIEGEL

PAUL C. REARDON