### OPINION OF THE JUSTICES TO THE
### HOUSE OF REPRESENTATIVES.

*Public Welfare. Constitutional Law*, Public welfare, Equal protection of laws.

Increasing public welfare costs and migration of persons to Massachusetts to take advantage of more attractive public welfare benefits provided here would not constitute a "compelling state interest" which would be promoted by the enactment of legislation requiring that an applicant for public welfare assistance be a resident of Massachusetts for one year prior to making his application. [888–891, 892]

Proposed legislation requiring that an applicant for public welfare assistance be a resident of Massachusetts for one year prior to making his application would be unconstitutional as violative of the equal protection clause of the Fourteenth Amendment to the Federal Constitution. [890, 892–893]

On September 9, 1971, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the House on August 23, 1971, and transmitted to us on August 26, 1971. The order recites the pendency before the General Court of a bill printed as Appendix A to House Doc. No. 5850. A copy of Appendix A was transmitted to us with the order. The bill provides as follows: "Notwithstanding any provision of law to the contrary, and for so long as the commonwealth shall not be disqualified from federal reimbursement for its public assistance program, no payment for public assistance and care of any kind shall be made to any person applying therefor after the effective date of this act and during a period of five

years thereafter which applicant has not been a resident of the commonwealth for the period of one year next preceding such application except that upon application making a showing of need, the department of public welfare may furnish a person who, solely by the provisions of this act, is disqualified from eligibility for such assistance, with transportation and attendant expenses to another state or country, provided that such person has resided therein during the past twelve months or has legally responsible relatives therein or friends willing to undertake the obligation to support him."

The bill contains an emergency preamble which reads:

"*Whereas,* The deferred operation of this act would tend to defeat its purpose, which is to provide forthwith for a one year residency requirement for welfare recipients because of a compelling state interest which requires an immediate alleviation of the welfare burden in order to permit the commonwealth to provide for the financing of other vital needs of its people from its own revenues at least until the federal government begins to return adequate revenues to the several states on an equitable basis, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public safety, health and convenience."

The order refers to the interim report of the Joint Special Committee Investigating Welfare (1971 House Doc. No. 5850, *supra*). It then recites the rapid increase in the cost of public welfare from 1960 to fiscal year 1972, to an extent making proposed welfare expenditures approximately one-half the entire State budget. The order refers also to *Shapiro* v. *Thompson*, 394 U. S. 618, and to *Opinion of the Justices,* 357 Mass. 827 [1] (for convenience hereafter referred to as the opinion of March 24, 1970). The order then suggests that 1971 House Doc. No. 5850 and the emergency preamble quoted above constitute "a legislative finding that there is a compelling state interest in . . . enacting

. . . [the proposed] legislation at this time" and that "the continued soaring [welfare] costs . . . especially in the area of transients . . . attracted by the higher welfare payments . . . offered in this commonwealth would result in the commonwealth not being able to finance . . . other vital needs . . . from its own revenues."

The questions are:

"1. Would the enactment of Appendix 'A' to House, No. 5850 promote a compelling state interest in view of the legislative findings as aforesaid?

"2. Would the enactment of said Appendix 'A' into law be violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and of Article 10 of the Declaration of Rights of the Constitution of the Commonwealth?"

This court has already indicated in the opinion of March 24, 1970, *supra*, that *Shapiro* v. *Thompson*, 394 U. S. 618, by its terms has very broad application. We pointed out that the majority opinion in the *Shapiro* case "invalidated statutes of Connecticut, Pennsylvania, and the District of Columbia which denied welfare assistance to persons who, otherwise eligible, had not resided within the jurisdiction for at least one year immediately preceding their applications for assistance." We do not repeat here the extensive quotations from the *Shapiro* opinion made in the opinion of March 24, 1970.

The *Shapiro* opinion has been widely followed in generally comparable situations. See *Morrison* v. *Vincent*, 300 F. Supp. 541 (S. D. W. Va. — three judge ct.); *Bryson* v. *Burson*, 308 F. Supp. 1170 (N. D. Ga.); *Baxter* v. *Birkins*, 311 F. Supp. 222 (D. Colo. — three judge ct.); *Passmore* v. *Birkins*, 311 F. Supp. 588 (D. Colo.); *Crapps* v. *Duval County Hosp. Authy.* 314 F. Supp. 181 (M. D. Fla.); *Valenciano* v. *Bateman*, 323 F. Supp. 600 (D. Ariz. — three judge ct.); *Rivera* v. *Dunn*, 329 F. Supp. 554 (D. Conn. — three judge

ct.). See also *Cole* v. *Housing Authy. of Newport*, 312 F. Supp. 692, 700–702 (D. R. I.); *Richardson* v. *Graham*, 313 F. Supp. 34 (D. Ariz. — three judge ct.); *Lipman* v. *Van Zant*, 329 F. Supp. 391, 399–402 (N. D. Miss. — three judge ct.); comments, 83 Harv. L. Rev. 7, 40–47, 118–126; 70 Col. L. Rev. 134.

We have examined the documentary material referred to in the order. See, for example, the interim report found in 1971 House Doc. No. 5850, pp. 74–75, 79, 266–269. This report (p. 79) takes "note of the residency requirement adopted by the State of New York, since . . . [its] effect . . . will be felt by the Commonwealth at least until the courts decide on its constitutionality." It appears that following the proceedings in *Lopez* v. *Wyman* reported in 329 F. Supp. 483 (W. D. N. Y.) a three judge court by an order entered on August 9, 1971, held the New York requirement unconstitutional.[1]

The interim report (pp. 266–269) further makes reference to the problem of "persons migrating to the Commonwealth from other . . . states that are not as generous to their welfare recipients" and whose "main reason for migrating to Massachusetts is the benefit to be derived . . . under our welfare programs." The interim report also points out that this migration "jeopardizes . . . the Commonwealth's ability to provide the funds with which to carry out" other perhaps more significant aspects of the State's welfare programs. Primarily economic considerations such as these were fully considered in the majority opinion of the Supreme Court of the United States in the *Shapiro* case, 394 U. S. 618, 622–627, 627–629, 631–633, 634–638. All were viewed in that majority opinion as not constituting a *"compelling state interest"* (see p. 638) which would justify imposition of the residence requirement, as to which the majority opinion said (p. 633), "The saving of welfare costs cannot justify an otherwise invidious classification."

---

[1] The three judge court's decision was affirmed sub nom. *Wyman* v. *Lopez*, 404 U. S. 1055. REPORTER.

Mr. Justice Harlan, in a careful and clear dissent (pp. 655–677), advanced essentially all the grounds, economic and otherwise, which in the order are suggested in any way as justifying a residence requirement. His views did not prevail. We have no basis for any prediction that his views would now be adopted.

There is no occasion for us now to determine whether we agree with Mr. Justice Harlan. Until and unless there is some clearly stated change in attitude (from that expressed in the *Shapiro* case) on the part of a majority of the justices of the Supreme Court of the United States, we are bound by that majority opinion. We can only repeat, with respect to the pending bill, what we said concerning the bill con-. sidered in the opinion of March 24, 1970 (see 357 Mass. 827, 830) : "Even if we were to reach a conclusion that House No. . . . [5850, Appendix A] could be validly enacted under art. 10 of the Declaration of Rights, provisions of the Constitution of the United States, as presently construed by a majority of the Supreme Court of the United States in *Shapiro* v. *Thompson*, 394 U. S. 618, would bar its enforcement. Accordingly, we think that we should now refrain from expressing any opinion whether under art. 10 of the Declaration of Rights we would have reached the same result as did that majority. The question is now, and will continue to be, wholly academic so long as the principles expressed in the *Shapiro* case remain effective."

We recognize that there have been some amendments of the form of Appendix A since the adoption of the order of August 23, 1971. Inquiry suggests that these changes have not been significant and that our opinion, on the two very general questions asked, is still desired. Because our views rest on the broad scope of the majority opinion in the *Shapiro* decision, we answer without awaiting an amendment of the order.

We interpret question 1, as asking whether a "compelling state interest" has been found to exist, as that term is used in the *Shapiro* case. As so interpreted, we answer question 1 in the negative.

We answer in the affirmative question 2, but only as it relates to the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. For reasons already stated we make no answer to the question asked concerning art. 10 of the Declaration of Rights of the Constitution of the Commonwealth, which is wholly academic in view of the majority opinion in the *Shapiro* case.

G. JOSEPH TAURO.
R. AMMI CUTTER.
JACOB J. SPIEGEL.
PAUL C. REARDON.
FRANCIS J. QUIRICO.
ROBERT BRAUCHER.
EDWARD F. HENNESSEY.