OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* Freedom of the press and of speech, Political advertisements.

Proposed legislation, designed to prevent certain alleged abuses and acts of discrimination on the part of publishers in the area of political advertising, would be unconstitutional by reason of obscurity and vagueness with respect to the terms "political advertisement," "candidate," "organization," and "newspaper or other periodical," and with respect to language leaving open the scope of the legislation, and would also be unconstitutional by reason of infringing the rights of freedom of speech and freedom of the press. [893–895]

On June 29, 1972, the Justices submitted the following answers to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court respectfully submit their answers to the questions in an order adopted on May 15, 1972, and transmitted to us on May 17, 1972. The order recites the pendency before the General Court of a bill, House No. 2287, a copy of which was transmitted with the order. The bill is entitled, "An Act further regulating the publication of political advertisements by newspapers or other periodicals." The order requests the opinion of the Justices as to the constitutionality of the bill, if enacted, under art. 16 of the Declaration of Rights of the Constitution of the Commonwealth, and under the First Amendment of the Constitution of the United States.

Similar questions were presented last year in an order adopted by the House of Representatives concerning a bill identical in all respects to the current bill. See 1971 Senate Bill No. 1451. On that occasion "we found ourselves unable in the press of other judicial business to give our answers before the Governor prorogued [the

1971 session of] the General Court." *Answer of the Justices*, 360 Mass. 891, 892. In the absence of a "solemn occasion" (see the Constitution of the Commonwealth, Part II, c. 3, art. 2, as supplanted by art. 85 of the Amendments), the Justices "decline[d] to answer," but indicated that "a new order . . . [might] be adopted." by "one or the other house . . . during the 1972 session." *Id.* at 1769–1770. The two briefs filed last year to assist the Justices[1] were retained and have been consulted in connection with the present request.

The bill would amend G. L. c. 56, entitled, "Violations of Election Laws," by inserting after § 39 two new sections, 39A and 39B, which in their entirety are as follows:

"*Section* 39A. If the owner, editor, publisher, or agent of a newspaper or other periodical publishes a political advertisement for or in behalf of a candidate or organization relating to a certain primary, election, or referendum, he shall not refuse to publish a political advertisement for or in behalf of any other candidate or organization relating to the same primary, election or referendum, unless such publication would violate other provisions of this chapter.

"Whoever violates this section may be enjoined by a suit in equity commenced by such aggrieved candidate or organization and shall forfeit to him or it not less than one hundred dollars. The court may award such additional damages as it may deem proper, together with costs of suit including a reasonable attorney's fee.

"*Section* 39B. The owner, editor, publisher or agent of a newspaper or other periodical shall not charge for the publication of a political advertisement an amount greater than would be charged for a non-political advertisement offered under similar circumstances and of

---

[1] The briefs were filed by the Massachusetts Newspaper Information Service, and by the Americans for Democratic Action together with the Civil Liberties Union of Massachusetts.

comparable size, complexity, and location in the same edition or issue of such newspaper or periodical.

"Whoever violates this section shall be liable in a civil action to the candidate or organization aggrieved for treble the differential between the amount charged and the amount that should have been charged, together with costs of suit including a reasonable attorney's fee."

The questions propounded are:

"1. Would the enactment of House, No. 2287 violate the First Amendment of the Bill of Rights of the United States Constitution and Article XVI of the Declaration of Rights of the Constitution of Massachusetts?

"2. Does the attempt to regulate political advertising in House, No. 2287 constitute interference with or prior restraint on the freedom of the press?"

We find it appropriate to consider the questions together.

We do not pass on the possibility that legislation of the type proposed may be drafted which will withstand attack on constitutional grounds. Compare *Chronicle & Gazette Publishing Co. Inc.* v. *Attorney Gen.* 94 N. H. 148.

The apparent objective of the proposed legislation is to prevent certain alleged abuses and acts of discrimination on the part of publishers in the area of political advertising.

Free people are afforded their greatest measure of protection in maintaining their freedom by an independent and unregulated press. The constitutional guaranty of a free press provides the owners of news media with great power but with even greater responsibilities in the exercise of that power. Any abuse of this power and responsibility, even by a small minority, threatens and jeopardizes the unfettered and unregulated freedom of the entire news media. The normal reaction to abuse of power is a move for governmental

regulation. See Tauro, Fair Trial—Free Press Revisited, 55 Am. Bar Assn. J. 417, 418. See also Barron, Access to the Press — A New First Amendment Right, 80 Harv. L. Rev. 1641.

The vices of this measure seem to us to lie in certain obscurities which it contains and in the impermissible vagueness which, in our view, renders it unconstitutional. *Opinion of the Justices,* 353 Mass. 779, 783–784, and cases cited.

To be specific, "political advertisement" as it appears in § 39A is not defined. Does this term include "paid" material only? Nor are the terms "candidate" and "organization" defined. The latter term requires definition. It appears to possess connotations broader than "political committee" or "political party" (see G. L. c. 50, § 1) but of that one cannot be certain.

The terms "newspaper or other periodical" would seem to include not only publications of general circulation but also limited circulation publications such as trade union newspapers, business newspapers, and church bulletins if they are published at regular or stated intervals. There is a problem in that some publications in this classification exist for the sole purpose of advocating a particular point of view (see Note, 44 Ind. L. J. 222, 237–238) and may not be operated with any view toward profit.

Furthermore, notwithstanding the provision of G. L. c. 56, including § 42 which forbids false statements knowingly designed to injure a candidate, it may still be argued that doubt exists whether publishers under § 39A would be immune from liability for libelous statements contained in political advertisements. See *Farmers Educ. & Coop. Union of America, N. D. Div.* v. *WDAY, Inc.* 360 U. S. 525.

In addition, we find ambiguity in the phrase "for or in behalf of a candidate" which modifies the words "political advertisement" appearing in § 39A. The language suggests that the section is applicable only to advertisements in favor of a candidate, leaving open the

possible question of advertisements designed to aid that candidate by the defeat of his opponent for the same nomination to, or election to, the same public office.

It would appear that the provisions above referred to, would produce an unnecessarily chilling effect on the publication of any political advertising absent greater precision in definition and reasonable limitation of the phrases and provisions mentioned. To be avoided is the chilling effect of uncertain regulation on First Amendment rights. See *Hodsdon* v. *Buckson*, 310 F. Supp. 528, 536 (D. Del. — three judge court). See also *Commonwealth* v. *Boston Transcript Co.* 249 Mass. 477, 481–486; *Opinion of the Justices*, 341 Mass. 760, 785; *J. J. Gordon, Inc.* v. *Worcester Telegram Publishing Co. Inc.* 343 Mass. 142, 143–145.

We answer both questions, "Yes."

G. JOSEPH TAURO.
JACOB J. SPIEGEL.
PAUL C. REARDON.
FRANCIS J. QUIRICO.
ROBERT BRAUCHER.
EDWARD F. HENNESSEY.