OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* Freedom of the press and of speech, Political
advertisements. *Newspaper. Advertising.*

Proposed legislation providing that if the publisher of a newspaper
or other periodical of general circulation publishes any paid
political advertisement he shall not refuse to publish any respon-
sive, contrary, paid political advertisement, and authorizing en-
forcement of the mandate in a suit in equity, would violate the
freedom of the press provisions of the Constitution of the United
States and of the Constitution of Massachusetts.  [912–918]

Proposed legislation providing that the publisher of a newspaper or
other periodical of general circulation shall not charge for the
publication of any paid political advertisement an amount greater
than the local display rate charged for a paid non-political adver-
tisement, and authorizing recovery of treble the differential by
a person aggrieved by a violation, would not violate the freedom of
the press provisions of the Constitution of the United States and
of the Constitution of Massachusetts.  [918–920]

On July 13, 1973, the Justices submitted the following
answers to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of
Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the Senate on May 2, 1973, and transmitted to us on May 11, 1973. The order recites the pendency before the General Court of a bill, House No. 3460, as amended, a copy of which was transmitted with the order. The bill is entitled, "An Act further regulating the publication of political advertisements by newspapers or other periodicals."

The order recites that the bill seeks in part to "prohibit a newspaper or periodical of general circulation from refusing to accept political advertising which tends to aid, injure or defeat one candidate if the newspaper or periodical has already accepted political advertising from another candidate for the same public or political office or from refusing to accept political advertising in relation to one position with respect to a question to be submitted to the voters if said newspaper or periodical has already accepted political advertising in relation to another position with respect to the same question to be submitted to the voters." The order states further that the bill would also "prevent newspapers or other periodicals of general circulation from imposing a charge for political advertising which is greater than the charge imposed upon other nonpolitical advertising offered under similar circumstances and of comparable size, complexity and location in the same issue or edition of said periodical or newspaper."

The bill inserts two new sections in G. L. c. 56, which would read as follows:

"*Section 39A.* If the owner, editor, publisher or agent of a newspaper or other periodical of general circulation publishes any paid political advertisement designed or tending to aid, injure or defeat any candidate for public or political office or any position with respect to a question to be submitted to the voters, he shall not refuse to publish any paid political advertisement tending to aid,

injure or defeat any other candidate for the same public or political office or any other position with respect to the same question to be submitted to the voters in the primary or election unless such publication would violate section forty-two or any other provision of this chapter.

"Whoever refuses to comply with this section may be ordered to comply therewith in a suit in equity commenced by any aggrieved candidate or other person or persons and shall forfeit to him or them not less than one hundred dollars. The court may award such additional damages as it may deem proper, together with costs of suit, including a reasonable attorney's fee.

*Section 39B.* The owner, editor, publisher, or agent of a newspaper or other periodical of general circulation shall not charge for the publication of any paid political advertisement an amount greater than the local display rate charged for a paid nonpolitical advertisement offered under similar circumstances and of comparable size, complexity, and location in the same edition or issue of such newspaper or periodical.

"A candidate or other person or persons aggrieved by a violation of this section may recover treble the differential between the amount charged and the amount that should have been charged, plus court costs, and a reasonable attorney's fee."

The questions propounded are:

"1. Would the enactment of House No. 3460 violate the First Amendment to the Constitution of the United States and Article XVI of Part the First of the Constitution of Massachusetts, as amended by Article LXXVII of the Amendments to said Constitution of Massachusetts?

"2. Does the attempt to regulate political advertising in House No. 3460 constitute interference with or prior restraint on the freedom of the press?"

Substantially these same questions were presented to the Justices of this court last year with respect to legislation proposed on the same subject. In answering the questions presented last year, the Justices said that the proposed legislation had obscurities and an impermissible vagueness which rendered the measure unconstitutional. *Opinion of the Justices,* 362 Mass. 891, 894. The proposed legislation now considered by us remedies almost all of the difficulties which were found in the previous bill.

The issues are substantially the same under the First Amendment freedom of the press provisions of the Constitution of the United States (as applicable to the States under the Fourteenth Amendment), and under the "liberty of the press" provisions of art. 16 of the Declaration of Rights of the Massachusetts Constitution. See *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 249–250. Because the two questions posed to us raise substantially the same constitutional issues, we will consider those questions together as to each section of the bill.

*Section 39A.* Proposed § 39A provides that an owner, editor, publisher or agent of a newspaper or other periodical of general circulation who publishes a paid political advertisement concerning a candidate for public office must publish a paid political advertisement concerning any other candidate for the same public office. Moreover, similarly, if such a person publishes a paid political advertisement designed or tending to aid, injure or defeat any position with respect to a question to be submitted to the voters, he must publish any paid political advertisement on any other position with respect to the same question.

In its simplest form the question is whether, if a newspaper or other publication of general circulation has published a paid political advertisement, it is a violation of Federal or State constitutional protections accorded to the press to compel that newspaper or other publication to publish paid political advertisements espousing a contrary view.

We have held, without explicit consideration of consti-

tutional questions, that a newspaper, acting alone, is commonly at liberty to reject advertising as it sees fit. *Commonwealth* v. *Boston Transcript Co.* 249 Mass. 477. *J.J. Gordon, Inc.* v. *Worcester Telegram Publishing Co. Inc.* 343 Mass. 142, 143–144. See *North Station Wine Co. Inc.* v. *United Liquors, Ltd.* 323 Mass. 48, 51. This is the almost unanimous conclusion expressed elsewhere in this country. Annotation, 18 A. L. R. 3d 1286. The result might be different if the particular publication involves State action within the meaning of those words under the Fourteenth Amendment. See *Chicago Joint Bd. Amalgamated Clothing Wkrs. of Am. AFL–CIO* v. *Chicago Tribune Co.* 435 F. 2d 470, 474 (7th Cir.), cert. den. 402 U. S. 973; *Associates & Aldrich Co. Inc.* v. *Times Mirror Co.* 440 F. 2d 133, 134–136 (9th Cir.); *Radical Lawyers Caucus* v. *Pool,* 324 F. Supp. 268, 270 (W. D. Texas); *America's Best Cinema Corp.* v. *Fort Wayne Newspapers, Inc.* 347 F. Supp. 328, 335 (N. D. Ind.).

No decision cited in the briefs filed with this court [1] and no case which we have found deals with a State statute requiring a newspaper to publish a paid political advertisement.

Freedom of the press does not mean that the press may not be subjected to reasonable regulation. Clearly the press has no special immunity from civil and criminal laws which relate to its business aspects. *Associated Press* v. *National Labor Relations Bd.* 301 U. S. 103, 132–133. *Associated Press* v. *United States,* 326 U. S. 1, 20. *Mabee* v. *White Plains Publishing Co.* 327 U. S. 178, 184. See *Commonwealth* v. *Boston Transcript Co.* 249 Mass. 477, 484; *Branzburg* v. *Hayes,* 408 U. S. 665, 682–683; *Pittsburgh Press Co.* v. *Pittsburgh Commn. on Human Relations,* 413 U. S. 376, 382. However, when dealing with

---

[1] In response to a notice concerning the filing of briefs with the Justices, the Attorney General of the Commonwealth has filed a memorandum contending that § 39A is unconstitutional and that § 39B is constitutional. A brief for the Massachusetts Newspaper Publishers Association argues that the bill is unconstitutional in its entirety. The Massachusetts Chapter, Americans for Democratic Action, and the Civil Liberties Union of Massachusetts have filed a joint brief arguing that the bill is constitutional in all respects.

First Amendment rights the Supreme Court of the United States has traditionally been unwilling to uphold State regulation of the expression of political views. See *Schneider* v. *State,* 308 U. S. 147, reversing *Commonwealth* v. *Nichols,* 301 Mass. 584; *Mills* v. *Alabama,* 384 U. S. 214, 219–220. See also *Bowe* v. *Secretary of the Commonwealth, supra,* at 251.

Constitutional litigation concerning attempted regulation of what shall or shall not appear in the press usually involves governmental attempts to restrict or forbid publication. See *Near* v. *Minnesota, ex rel. Olson, County Attorney,* 283 U. S. 697, 716–717. More rarely have courts considered the right of government constitutionally to direct the publication of specific items. The constitutionality of a mandate to publish has, however, been considered and upheld in connection with the so called fairness doctrine applied to radio and television stations by the Federal Communications Commission. *Red Lion Bdcst. Co. Inc.* v. *Federal Communications Commn.* 395 U. S. 367. In addition, where public health considerations were strong and the subject was one involving only marginal "free speech" concepts, a governmental requirement that radio and television stations which carried commercial cigarette advertising devote a significant amount of broadcast time to presenting the case against cigarette smoking has withstood constitutional challenge. *Banzhaf* v. *Federal Communications Commn.* 405 F. 2d 1082 (D. C. Cir.), cert. den. sub nom. *National Assn. of Broadcasters* v. *Federal Communications Commn.* 396 U. S. 842.[2] However, in a more closely analogous situation, the Supreme Court of the United States recently held that persons wishing to broadcast responsive, paid editorial comments on a controversial issue had no con-

---

[2] Federal legislation now forbids cigarette advertising on radio and television. Pub. L. 91–222 (April 1, 1970), 15 U. S. C. § 1335 (1970). That legislation has been held to be constitutional in a challenge based in part on asserted First Amendment rights. *Capital Bdcst. Co.* v. *Attorney Gen.* 333 F. Supp. 582, 584–585 (D. D. C.), affd. without opinion sub nom. *Capital Bdcst. Co.* v. *Acting Attorney Gen.* 405 U. S. 1000.

stitutional right to insist that a broadcaster permit them to express their views, leaving to the fairness doctrine any obligation on the broadcast media to permit responsive comment on controversial issues of public importance. *Columbia Bdcst. Sys. Inc.* v. *Democratic Natl. Comm.* 412 U. S. 94. The court did not reach the question whether Congress could constitutionally compel a broadcaster to accept editorial advertisements. *Id.* at 119.

The process of communication by printed word presents certain different considerations from those applicable to the broadcast media. The physical limitations inherent in the use of the airwaves have necessitated governmental regulation with the unavoidable result that, even assuming a financial capacity to do so, not everyone has access to the means of broadcasting his views. The court's opinion in the *Columbia Bdcst. Sys. Inc.* case noted the distinction between the broadcast media and newspapers, and at least four of the Justices recognized explicitly that obligations which may be constitutionally permissible as to broadcasters could not be imposed on newspapers. Mr. Justice Douglas, concurring, 412 U. S. at 157–159. Mr. Justice Stewart, concurring, 412 U. S. at 134–135. Mr. Justice Brennan, joined by Mr. Justice Marshall, dissenting, 413 U. S. at 181–182, fn. 12, par. 2. Only two of the Justices concluded that First Amendment free speech principles compelled a broadcaster to permit editorial advertising, and they did so on the ground that governmental involvement in the operation of broadcast licensees was so extensive that the absolute denial of an individual's right to broadcast editorial advertising involved a governmental abridgement of the constitutional right of freedom of speech. Any comparable argument of governmental involvement in the publication of a privately owned newspaper would rest on a much shakier foundation. We are aware of no circumstances in which it has been held that the First Amendment right of free speech gives a private individual the right to require the publication of editorial advertising. See *Chicago Joint Bd. Amalgamated Clothing Wkrs. of Am. AFL–CIO* v.

*Chicago Tribune Co.* 435 F. 2d 470, 478 (7th Cir.), cert. den. 402 U. S. 973.

The fundamental purpose of the First Amendment and art. 16 of the Declaration of Rights to favor the dissemination of information must, of course, be considered. The apparent purpose of § 39A is to provide that, when a paid advertisement on one side of a political issue has been published, a contrary view or views may be published in a paid political advertisement or advertisements. Thus, it is contended, expression, especially of minority views, may be facilitated. However, § 39A presents a paradox because its enactment, instead of achieving a fairer dissemination of political advertising, may produce the chilling effect of discouraging newspapers and the other affected publications from accepting any political advertisements. A newspaper or other publication of general circulation may decide to publish no political advertisements on an election issue rather than expose itself to a commitment to publish all responsive advertisements. Section 39A contains no restriction on the number, size or complexity of responsive advertisements. Each newspaper or other publication would have to devote particular attention to its statutory obligation not to publish "false statements" (G. L. c. 56, § 42) and would not be completely immune from libel suits. The penalties which might be imposed for a violation of § 39A are not insubstantial. For example, failure to comply with a court order to publish a responsive political advertisement, issued in a suit brought under § 39A, might result in punishment for contempt of court. In these circumstances § 39A may in effect discourage the distribution of information for the benefit of the electorate.

First Amendment freedoms may be constitutionally abridged if the governmental regulation furthers an important or substantial governmental interest and "if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States* v. *O'Brien,* 391 U. S. 367, 377. See *Government of the Virgin Islands* v. *Brodhurst,*

285 F. Supp. 831, 836–838 (D. St. Croix). The burden on government to show justification for its attempted regulation is substantial. See *New York Times Co.* v. *United States*, 403 U. S. 713, 714. House Bill No. 3460, as amended, furnishes no legislative findings or other indication of a substantial and overriding governmental interest that all newspapers and all other publications of general circulation in this Commonwealth publish all responsive, paid political advertisements of whatever nature or size.

Where commercial, rather than political, advertising is involved, governmental regulation of advertising has withstood a challenge that First Amendment freedoms have been abridged. *Valentine* v. *Chrestensen*, 316 U. S. 52. However, as a recent five to four decision of the United States Supreme Court indicates, it is a close question whether a State may constitutionally regulate even the form in which commercial advertising is published. *Pittsburgh Press Co.* v. *Pittsburgh Commn. on Human Relations*, 413 U. S. 376. In the *Pittsburgh Press Co.* case the court upheld an order of the defendant commission pursuant to a city ordinance which forbade newspapers from carrying "help-wanted" advertisements in sex-designated columns except where the employer or advertiser is free to make hiring or employment decisions on the basis of sex. The court regarded the advertisements as "classic examples of commercial speech" (413 U. S. at 385). The court said that the issue was not the content of the advertisements, but whether it was a constitutional denial of freedom of the press to regulate the particular column in which a "help-wanted" advertisement should appear. 413 U. S. at 391. The court regarded the defendant Commission's order as sweeping "no more broadly than necessary" and held that the order did not infringe the First Amendment rights of the newspaper.

The four dissenting Justices in the *Pittsburgh Press Co.* case attribute such a broad sweep to the constitutional protection available to the press that they would in-

validate governmental regulation concerning as limited a matter as the column in which a particular employment advertisement is to appear. Chief Justice Burger believed that the newspaper "acted within its protected journalistic discretion." 413 U. S. at 394. Mr. Justice Stewart, with whom Mr. Justice Douglas and Mr. Justice Blackmun agreed in this respect, concluded that under the First and Fourteenth Amendments a governmental agency cannot "tell a newspaper in advance what it can print and what it cannot" print. 413 U. S. at 400.

The situation at which § 39A is directed may be the "monopolistic" status of certain news publications.[3] However, compulsion to publish all responsive political advertisements, applicable to all newspapers and other publications of general circulation in the Commonwealth, goes beyond what is essential to the furtherance of any interest of a State in its citizens having a right of access to newspapers in order to express, at their expense, political ideas which otherwise would not be published. See Barron, Access to the Press — A New First Amendment Right, 80 Harv. L. Rev. 1641, 1676–1678. Indeed, no set of circumstances may exist which would support a legislative mandate that a newspaper or other publication of general circulation must publish a political advertisement. The views expressed and implied in the opinion of the court and in the dissenting opinions in the *Pittsburgh Press Co.* case, *supra*, create substantial doubt that such legislation would pass constitutional muster.

Based on what we have said, the answer to each question must be "yes" as applied to § 39A.

*Section 39B.* Section 39B requires that charges for political advertisements not be greater than the "local display rate" for nonpolitical advertisements which are offered "under similar circumstances and [are] of comparable size, complexity, and location in the same edition or issue" of a newspaper or other periodical of general

---

[3] Such a suggestion is at least implied in the brief filed with us on behalf of the Americans for Democratic Action, one of the petitioners on whose behalf House Bill No. 3460 was initially filed.

circulation. Based on our analysis of the cases discussed earlier in this opinion, we believe that such a statute would survive a constitutional challenge on free press grounds. It deals exclusively with a commercial aspect of the operation of a newspaper or other periodical. There is no compulsion to publish. If the advertisement is accepted, no greater charges may be made to the political advertiser than are imposed on all other advertisers in the same circumstances. The New Hampshire Supreme Court upheld substantially similar legislation over twenty-five years ago. *Chronicle & Gazette Publishing Co. Inc.* v. *Attorney Gen.* 94 N. H. 148. The New Hampshire Supreme Court noted statutes of the same character in five other States, none of which had apparently been challenged on constitutional grounds. 94 N. H. at 151. Legislation of the same nature is still in effect in those five States. See Minn. Sts. (1959) § 211.03; Miss. Code Anno., tit. 14, c. 1, § 3176; N. D. Code Anno. 46–05–05; Vernon's Civil Sts. Anno. (Texas) art. 14.10 (c) ; Utah Code Anno. (1953), tit. 20, c. 14, § 20–14–27. Since the 1946 decision of the New Hampshire Supreme Court, other States have passed legislation regulating rates charged for political advertisements. La. Rev. Sts., tit. 18, § 1533 (Acts of 1948, No. 339, §§ 1, 2). Md. Anno. Code, art. 33, § 26–17 (b) (Acts of 1965, c. 744). Wash. Laws of 1955, c. 186, § 2. W. Va. Code, § 59–3–6 (1972 Supp.) (Acts of 1967, c. 105). Wis. Sts. Anno., § 12.15 (2) (Laws of 1949, c. 446). None of the statutes of these various States appears to have been challenged in any reported decision. Comparable Federal legislation has been in effect for broadcast licensees since 1952 without apparent challenge. See July 16, 1952, c. 879, § 11, 66 Stat. 717, 47 U. S. C. § 315 (b) (1970), as now amended by Pub. L. 92–225, U. S. Code Cong. & Adm. News 1972, p. 3.

From what we have said we do not want to be understood as indicating that § 39B will be free from difficulties in its practical operation. We assume that, as to each newspaper or other publication of general circula-

tion, its "local display rate charged . . . under similar circumstances" will be ascertainable. If, however, a political advertisement is submitted in circumstances which are meaningfully dissimilar from those applicable to nonpolitical advertisements, § 39B may have no effective application. Moreover, a person's status as a "candidate" may not always be clear. Perhaps § 39B would be more precise in this respect if it referred to a "legally qualified" candidate. See, e.g., 47 U. S. C. § 315 (a) (1970).

The answer to each question as applied to § 39B is "no."

G. JOSEPH TAURO
PAUL C. REARDON
FRANCIS J. QUIRICO
ROBERT BRAUCHER
EDWARD F. HENNESSEY
BENJAMIN KAPLAN
HERBERT P. WILKINS